Nisbet vs. Lawson.

## No. 44.—FRANKLIN A. NISBET, plaintiff in error, vs. JAMES LAWSON, defendant in error.

An appeal may be taken from a confession of judgment, reserving the right of appeal, as well as from the verdict of a jury.

The recognizance of appeal need not be attested by the clerk.

It is not the duty of the clerk to certify the day on which the court adjourned, in sending up the appeal. It will be presumed, unless the contrary appear, that the appeal was entered within the four days after the adjournment of the court at which the verdict was obtained.

The entry on the bench docket, of two general continuances, without anything appearing on the minutes of the court, will not work a discontinuance of a cause, so as to entitle the defendant to a judgment of *non pros.*, under the law and the rules of practice in this State.

If the clerk send up the original papers, together with a certified copy of the appeal bond, it is a compliance with the act which requires him to *transmit the appeal.*

An appeal may be entered by the attorney of record. The law does not require that the party appealing should sign the bond. He must pay costs, and *give security* for the eventual condemnation money. His signature to the bond is only necessary, therefore, to signify his assent to the appeal. If put there by the attorney at law, he will be bound by the bond, if he subsequently recognize and ratify the act.

A declaration, seeking to charge an attorney, on a promissory note placed in his hands for collection, must either allege that he received the money, or that the debt was good, and a reasonable time had elapsed, and that it had not been collected and paid over, or that the claim had been lost by neglect, or want of professional skill.

An endorser on a note is an *incompetent* witness, on the score of *interest*, to prove the payment of money by him to the attorney of the plaintiff, in an action against the attorney, unless released.

An agent of an insurance company may maintain an action in his own name, on a note belonging to the company, provided it be endorsed in blank, or made payable to bearer. Nor can the title of the holder of a negotiable note be questioned, unless the defence *makes it necessary.*

An agent has no right to direct the payment of his principal's money to his own debt. And if the attorney of the principal pays money collected for him, to the debts of the agent, knowing that the funds belong to the principal, it will not be a good discharge.

In an action of assumpsit, by the principal against his attorney, for money had and received, the measure of damages is the amount of money collected, with interest thereon, from the time it was demanded, or from the date of its reception, if the attorney has failed to give notice to his client, or willfully misapplied or appropriated the money to his own use.

For the facts and grounds of error taken in this case, see the opinion of the Supreme Court.

His Honor Judge NISBET gave no opinion in this case, the plaintiff in error being a relative.

JAMES JOHNSON, for the plaintiff in error.

The appeal should have been dismissed.—*Hotchkiss,* 600 ; rule of court, 6 *Johnson Rep.* 296 ; 1 *Chitty's Pl.* 523 ; *Tidd's Prac.* 626 ; *Ala.* 98, *and* 395 ; 1 *Strange,* 492.

The court erred in ruling Grimes competent.—1 *Campbell,* 251 ; 10 *Pickering,* 137.

The court erred in charging that an agent might sue in his own name.—*Chitty Pl.* 2; 2 *Stewart and Porter*, 134; 12 *Johnson Rep.* 1; 1 *Peters' Rep.* 46.

The court erred in charging the jury in reference to the powers of a general agent.—2 *Kent*, 613; 3 *Term.* 757; 5 *Peters*, 292.

The court erred as to the allowance of interest, and the form of the verdict. —*Hotchkiss*, 395; *Ib.* 598.

A. H. COOPER, for the defendant in error. -

1st. The court below committed no error in overruling the motion to dismiss the appeal.—*Hotchkiss' Dig.* 600, 682; *Rules Superior Court*, title *Appeals; Best on Presumptions*, 78, 79; 10 *Johns. Rep.* 220; 12 *Ib.* 316; 3 *Stewart*, 23; *Com. Dig. Attorney B.* 1, 20.

2d. The court committed no error in overruling the demurrer to the second count in the declaration.—2 *Chit. Prac.* 342, *et seq.*; *Saunders on Pl. and Ev.* 130, 131.

3d. That the witness Grimes was competent, his interest, if any, being equally balanced.—*Birt* vs. *Kershaw*, 2 *East*, 456; *Ilderton* vs. *Atkinson*, 7 *T. R.* 476; *Woodhull* vs. *Holmes*, 10 *Johns. Rep.* 231; *Waters* vs. *Burnet*, 14 *Johns. R.* 362. See also, *Fleming* vs. *Gilbert*, 3 *Johns. Rep.* 528; *Edmonson* vs. *Machell*, 2 *Term. Rep.* 4; *Edwards* vs. *Evans*, 3 *East*, *R.* 455.

4th. An agent for hire or reward, may maintain an action in his own name, especially when the contract is made directly with him.—*Chit. on Con.* 230; *Story on Agency*, 393, 396 *et ref.*; *Gardiner* vs. *Davis*, 2 *Carr. and P.* 49.

5th. That a general agent cannot direct the money of his principal, to his, the agent's, own debts.—*Story on Agency*, 127, 138; *Kinne's Law Compendium*, 1845, tit. *Agent; Maanss*, vs. *Henderson*, 1 *East's, Term. R.* 335.

6th. The verdict of the jury in assumpsit, for money had and received, is for damages; and the measure of damages is the principal sum received, with interest thereon, from the time of the demand.—*Prin. Dig.* 427, 294; 6 *Wheel. Com. Law*, 215.

*By the Court*—LUMPKIN, Judge.

This action was originally brought in the Inferior Court of Muscogee county, by James Lawson, against Franklin A. Nisbet, to recover an amount collected by him, as an attorney, on a note made by William B. Phillips, dated March 25, 1841, for one thousand dollars, payable, sixty days after its date, to the order of William C. Gray, at the Chattahoochy Railroad and Banking Company of Georgia, with interest from date, endorsed by Gray, and also by Greenwood & Grimes.

The defendant pleaded *non assumpsit*, payment; and, further, that the money had not been demanded of him before suit brought.

The plaintiff *confessed* a judgment to the defendant, *reserving the right of appeal;* and thereupon did appeal to the Superior Court.

At May Term, 1846, Judge HILL presiding, a verdict was rendered for the plaintiff.

At the trial of the cause, and before the same was submitted to the jury, the defendant moved to dismiss the appeal, on the following grounds, to wit:

1st. That the appeal was not taken from the verdict of a jury, but from a confession of judgment, reserving the right of appeal.

2d. That the bond was not attested by the clerk, as required by the rules of court.

3d. That it did not appear affirmatively, that the appeal was taken within four days after the adjournment of the court below.

4th. That it appeared to the court, (which was admitted by the plaintiff,) that, for the last two terms of this court, no judicial action was had in the case, and that therefore the case was discontinued.

5th. That it did not appear by the certificate of the clerk, that the whole proceeding below was transmitted to this court—the clerk certifying the bond alone.

6th. That the appeal bond was void, because it had been executed by the attorney of record, and not by the party himself.

The court overruled the motion to dismiss the appeal, and thereupon the defendant excepted.

The defendant then demurred to the second count in the declaration, and the demurrer, having been heard, was overruled, and thereupon the defendant excepted.

The cause was then submitted to the jury, on the issues joined between the parties. The plaintiff offered, first, in evidence, a declaration filed in the Inferior Court of Muscogee county, by Nisbet, as attorney; in which said Lawson was plaintiff, and William C. Gray defendant. The writ set forth, as the foundation of the action, the *same note for the collection* of which *the plaintiff sought to make the defendant chargeable;* and averred, that it was endorsed by Gray to Greenwood & Grimes, and by *them to Lawson.* The declaration was signed by Nisbet, as attorney for Lawson, the present plaintiff, and the judgment was duly entered up in his favor. The original note, as described in the writ, was also given in evidence to the jury.

The plaintiff then introduced Grimes, one of the endorsers on the note, to prove the payment of the money due thereon to Nisbet.

The defendant moved the court to exclude his testimony from the jury, on the ground that he was incompetent, being interested in the event of the suit. But the court overruled the objection, and admitted the witness to testify, and thereupon defendant excepted. Grimes, being sworn, testified, that he was one of the firm of Greenwood & Grimes, who endorsed the note, on which the money was alleged to have been collected. The original note being shown him, he further testified, that in 1842, he paid on the note eight hundred dollars to Nisbet, which amount he (Nisbet) admitted was the balance due on said note, after applying the proceeds collected by defendant, of notes placed in defendant's hands by witness, and including the eight hundred dollars, and the proceeds of the notes placed in defendant's hands by witness, he paid defendant about eleven hundred dollars. Witness stated that he had several conversations with defendant on the subject. Being cross-examined, he testified that defendant stated that he received the note, alleged to have been collected, of one Gambrill, and that he considered it Gambrill's note and property.

Plaintiff swore Phillips, the maker of the note. He testified that he was master of a boat, and had sold some goods, damaged on his boat; and that the note in question was given by him, and endorsed for, and on account of, the property so sold by him, for the benefit of the indemnities of the policy of insurance, covering the goods damaged, and was in discharge of his liability for the goods so sold. That the note was made for an insurance company in New York; that the plaintiff in this action was the secretary of said insurance company; that Gambrill was

the cashier of the bank specified in the note, and that Lawson was not present when the note was given; and that Gambrill managed the whole matter in taking the note. The underwriters were not specified. The plaintiff introduced A. H. Cooper, who testified that he had acted as agent of plaintiff, demanded the money of defendant some six months before suit brought, that defendant refused to pay him the money, stating that it was a contest between him and one McCay, as to who should have the money. That he, the defendant, received the note of Gambrill, and had paid the proceeds thereof to Gambrill's creditors.

After the plaintiff rested his cause, and after argument had been had by the parties to the jury on the issues, the counsel for the defendant having insisted, in his argument, that no person but the individual in whom was the legal right to the money could maintain the action, the court charged the jury that such was the law; but that, if Lawson was the agent of the insurance company, for hire or reward, and though the money sued for might belong to the insurance company, yet he, Lawson, being an agent for hire or reward, might well maintain this action in his own name. To which charge, so given, defendant excepted. The defendant then requested the court to charge the jury, that if they should believe, from the testimony, that Gambrill was the general agent of the plaintiff, in reference to the note made by Phillips, and placed in defendant's hands, that the said Gambrill might well direct the application of the money collected thereon ; and that if Nisbet paid the money collected thereon to any person under the order of Gambrill, that he, Nisbet, might well do so, and that it would be a good discharge. The court refused to give the charge as requested, but charged that Gambrill might have been the general agent of the plaintiff; yet, being his agent, he had no right or power to order the payment of the money collected to demands against him, Gambrill ; and that if Nisbet paid the money under such directions from Gambrill, with the knowledge that Lawson was the owner of the note collected, he was not thereby discharged, but was still liable. To the refusal of the court to charge as requested, and to the charge as given, the defendant excepted. The court charged the jury, that if they should find for plaintiff, they should return a verdict for so much as damages, and that the measure of damages in the case was the amount of money collected by the defendant and interest thereon, from the time of the demand made on him for the money, and that the verdict should be for such entire sum, and not so much principal and so much interest. To which charge, so given, the defendant excepted.

The first ground of complaint is, that the court did not dismiss the appeal, *because* it was not taken from a verdict ; the bond was not attested by the clerk ; it did not appear when the appeal was taken ; it did not appear when the appeal was transmitted ; the suit was discontinued ; the appeal was entered by the attorney at law.

We see no sufficient reason for overturning a well-established and convenient practice in all the circuits in the State, in allowing appeals to be taken from *confessions* as well as verdicts, where the right to do so is *expressly reserved.* It saves time to the court, and costs to the parties ; and it is the agreement of record, that it may be done. And it will not do to say that it is absurd to litigate further, when the party has confessed a judgment against himself. He confesses *sub modo* only. It is a condi-

tional or qualified, and not an absolute confession, and he is entitled to the benefit of the *terms stipulated.* And as to the bond not being attested by the clerk, the law does not require that it should be. The statute is, that the party dissatisfied may, within four days after the adjournment of the court, enter an appeal in the clerk's office of such court, (as *matter* of *right*,) provided the person so appealing, shall, previous to obtaining such appeal, pay all costs which may have accrued on the former trial, and give security for the eventual condemnation money. The law does not even direct that a *bond* be given at all, much less prescribe the method of executing and attesting it. The rules of court, it is true, contain the form of the recognizance upon appeal to be taken by the clerks; and direct that the same be entered upon the minutes of the court, and attested by the clerk. And this is a very proper practice; still, if the party aggrieved, within four days after the court, comes forward, claiming a rehearing, and pays all costs, and gives security for the eventual condemnation money, whatever else may be omitted in the proceeding, upon compliance with these prerequisites, he is entitled to an appeal, as *matter of right.*

It is alleged, however, that it does not appear that the appeal was entered within four days after the adjournment of the court; that is, that the papers transmitted do not show *that* the recognizance bears date within four days from the adjournment. It is not necessary, we apprehend, that this fact should appear on the face of the papers. The clerk of the Inferior Court, in the present case, sent up the original papers, and a certificate of the appeal bond. It was no part of his duty to certify as to the time when the Inferior Court adjourned. We must presume that he knew his duty, and did it, and that he would not permit an appeal to be entered after the expiration of the time allowed by law for that purpose. If the defendant intended to object to the regularity of the appeal, it was competent for him to furnish proof as to the date of the adjournment, and upon production of this evidence, he would be in order to move to dismiss the appeal.

When an appeal is taken from the Inferior Court, it is the duty of the clerk thereof, to *transmit such appeal to the clerk of the Superior Court of the county in which the verdict shall be obtained.* In this case, the original papers are sent up, with a certified copy of the appeal bond: and this is a substantial compliance with the law.

It is admitted, and the record establishes the fact, that two successive terms elapsed without any action being had in the cause. And it is now insisted, that this is, by legal intendment, an abandonment of the suit. By the rules of pleading, if the plaintiff, after issue is joined, neglect to bring such issue on, to be tried in *due time,* as *limited* by the *course* and *practice of the court in the particular case,* he is adjudged not to follow or pursue his remedy as he ought to do; and thereupon a *non prosequitur* is given against him for this default. The rule then must be taken with the limitation which accompanies it, namely: where *the party* is *guilty* of *delays against the rules of law. Continuances* with us are regulated by law and the rules of court; each party—plaintiff and defendant—is entitled to *one* continuance only on the *first* trial; and *three, at most,* on the *appeal;* and the last of these must be for *providential cause.* In this is found a sufficient security against *unnecessary* delay. At any

rate, it would have to appear that the *default* in the present case had been contrary to the rules of law *in this State*, before judgment could be given against the plaintiff, as *in case* of nonsuit. Besides, it is the practice at present, in England, to refuse the judgment of *non jurors* for failure to file the declaration, replication, or other subsequent pleading, until a demand thereof is made in writing of the plaintiff, to *speed the cause.* And the settled practice of our courts has been, to grant an order *nisi,* before allowing judgment of *non pros.* to be signed. The truth is, that the suit was continued *generally* by the court, for two successive terms; and the presumption is, by the consent of *both* parties; but the entry does not appear upon the minutes, but upon the bench docket only.

It is further urged, that the attorney at law had no power to enter this appeal for his client. The rules of court, under which this appeal was entered, expressly authorized the appeal to be entered by the party in person, *or by his attorney at law*, and we believe the rule to be in accordance with the law. Upon general principles, it might well be doubted, whether the power to defend a cause would authorize the attorney to execute an appeal bond, which would bind his client, without his subsequent ratification of the deed. But under our statute, authorizing an appeal, it would seem to be unnecessary for the party himself to execute the bond. His signature to it is well enough, to signify his assent to the appeal, and thus to give jurisdiction to the appellate court. But the main object of the bond is, and the only one contemplated by the act, to make the appellee *secure* in recovering his demand; and if competent securities are obtained, this purpose is just as well answered without the party as with him. The *first verdict binds* his *property.* And this view is fortified by the construction put on the English statute, which requires the *party* to enter into recognizance, in order to stay execution upon writ of error brought.—*Barnes* vs. *Bulwer, Carth.* 121; *Good title* vs. *Bennington, Barn.* 75. If an attorney is warranted by his general retainer to bring a second suit on a note, after being *nonsuited* in the first, (*Scott* vs. *Elmerdene*, 12 *Johns. Rep.* 318,) and confess judgment without the will and consent of his client, and on whom process had not even been served (*Gray* vs. *Gray*, 2 *Roll. Rep.* 62; *Denton* vs. *Noyes*, 6 *T. R.* 296); surely he had the power to signify the assent of his client to carry up this case by appeal; and even to make him responsible upon the recognizance, the client having fully adopted the act as his own.

We are of the opinion, therefore, after a careful examination of the record, that the court below committed no error in overruling the motion to dismiss the appeal.

The defendant demurred to the second count in the declaration, for insufficiency, which is in the following words: "And for that whereas, also, heretofore, to wit: on the sixth day of July, in the year eighteen hundred and forty-one, to wit, in said county, in consideration that your petitioner, at the special instance and request of said defendant, had then and there retained and employed the said defendant, as an attorney, solicitor, and counselor, in the several courts of law and equity in the said State of Georgia, for certain reasonable fees and reward, to be paid by your petitioner to the said defendant, and had also then and there authorized and empowered, the said defendant in like manner, to sue for, settle and collect, a certain debt then due and owing, from one William

B. Phillips and William C. Gray, and certain persons, under the name and description of Greenwood and Grimes, to your petitioner, on a promissory note, bearing date the twenty-fifth day of March, in the year eighteen hundred and forty-one, made by the said William B. Phillips; whereby he, the said Phillips, promised to pay to the order of the said William C. Gray, sixty days after the date thereof, one thousand dollars, at the Chattahoochy Railroad and Banking Company of Georgia, with interest from the date thereof, for value received; which said note the said Gray afterwards, to wit, on the day and year last aforesaid, endorsed and delivered the same to the said Greenwood and Grimes, who then and there also endorsed and delivered the same to your petitioner; and to obtain satisfaction and payment of said debt from them, the said Phillips, Gray, Greenwood, and Grimes, he the said defendant undertook, and then and there faithfully promised your petitioner to render a just account to your petitioner, for all monies and securities for money, which he the said defendant should receive for and on account of such debt; and to pay and deliver all such money and securities to your petitioner, when he, the said defendant, should be thereunto afterward requested. And although the said defendant did afterwards, to wit, on the sixth day of July, in the year eighteen hundred and forty-one, receive a large amount and sum of money, under and by virtue of the said employment and authority, for and on account of said debt, to wit, the full sum of principal and interest due upon said note; yet the said defendant, not regarding his said promise and undertaking, but contriving and intending to injure and defraud your petitioner in this behalf, hath not rendered a just and reasonable account, or any other account, to your petitioner, of the money so received by him, the said defendant, or any part thereof; although to do this, he, the said defendant, was afterward, to wit, on the day and year last aforesaid, and oftentimes thereafter, requested by your petitioner; but so to do, the said defendant has hitherto refused, and still refuses, to the damage of your petitioner two thousand dollars."

It would appear, really, that the objection to this count should have been for *redundancy*, instead of *deficiency ;* and that the sin of the draftsman was that of *commission*, rather than of *omission*. An attorney who takes a note to collect, is chargeable in one of three ways. Either that he has received the money, and failed or refused to pay it over; or else, that he might have made it, and that a reasonable time has elapsed for that purpose, and that he has neglected to do his duty; or, that the debt has been lost by unskillfulness. This court proceeds upon the first assumption, *i. e.*, that the debt has been collected and withheld, after being demanded. It was not necessary that the plaintiff should have averred, that the defendant was retained for reward. It was enough to have set out, that he was retained as *an attorney*, which of itself implies a consideration.—2 *Lord Raym.* 909 ; 5 *Tr. R.* 143 ; 2 *Chitty's Rep.* 312. It was superfluous, also, to allege that the defendant promised to account for the moneys which he collected. His professional obligations imposed this duty, and created this liability, independent of any contract to that effect. Nor is it altogether certain that it was requisite to have set forth a *demand* before suit brought. When an attorney receives the money of his client, it is his duty to remit it to him forthwith, or give him notice of its collection. But if he neglects to give this information, and has con-

verted the money to his own use, or otherwise applied it illegally, I should be inclined to hold, that he would subject himself to suit, without demand previously made. In *Taylor* vs. *Bates* (5 *Cow.* 376), and other reported cases to be found in the books, it has been decided that an attorney was not liable for money collected, till demand made, or directions to remit. But in all such cases, it will be found that no *laches* are shown on the part of the attorney; that he has manifested a willingness to pay, by giving notice to his principal of the receipt of the money, and only waited for orders to pay over or account.

We are, consequently, of the opinion, that this count is *full to overflowing ;* and further, that, if it were more imperfect than the defendant charges it to be, its faults, in fact or in form, would be abundantly covered and cured by the verdict.

It is further argued, that *the court erred* in not withholding from the jury the testimony of Grimes, one of the endorsers on the note ; and this point is by no means free from doubt. In the examination which I have made, I find one adjudication in favor of the admissibility of Grimes. In *Gifford* vs. *Coffin*, (5 *Pick. Rep.* 448,) it was decided, that in an action against an attorney, to recover money collected by him of the plaintiff's debtor, (the identical case before us,) the debtor was held to be a competent witness to prove that he had paid the money to the attorney. WILLIAMS and WARREN cited *Browne* vs. *Babcock*, 3 *Mass. Rep.* 29, and *Ludlow* vs. *The Un. In. Co.* 2 *Sergt. & Rawle*, 119, in support of the competency of the witness. By reference to these cases, they do not sustain the principle contended for. In the first, it was ruled, that a consignee of goods on his own account, refusing to receive them, and afterwards selling them, as agent for the consignors, is a competent witness for the consignors, in an action by them against the purchasers, for the price of the goods. Chief Justice Parsons, in delivering the opinion of the court, shows that the witness, if interested at all, was called to testify against that interest. But he insisted that, in fact, he had no interest ; for, if the defendant should pay the money to him on his account, he would then be chargeable to the plaintiffs, as for money received to their use ; and if the money is not paid to him, the plaintiffs can have no action against him for the price of the goods.

The doctrine, in the Pennsylvania case, was, that a witness, who is liable to an action by the party for whom he is called, in case that party should not recover, *but who* is *protected from such an action by the statute of limitations*, is *competent*.

And in the main case of *Gifford* vs. *Coffin*, in which these authorities are adduced, the court say : " The witness states that he paid the note, and *that it is given up to him. This discharges his interest in the suit.*" Here the possession of the note by the witness is a fact and feature, perhaps, which would distinguish this *short* case from the one at bar. At any rate, in the absence both of argument and authority, we are not satisfied to follow it as a precedent.

In *Fuller* vs. *Wheilock*, (10 *Pick.* 137,) the Supreme Court of the same State (Mass.) decided, that a person who had been authorized by the plaintiff to receive the money, due to the plaintiff from the defendant on an account, and who had given the defendant a receipt for the amount, was incompetent, by reason of interest, to prove that no money had been

paid to him; and that the exception, in regard to *agents*, founded upon considerations of necessity and great public convenience, for the sake of trade and the common usages of business, did not apply to one who was called to testify to facts out of the usual and common course of business.

One of the main reasons relied on, for the exclusion of the witness, was, " that, if the plaintiff failed in that suit, he would have an immediate action against the witness, for money had and received; *an action which a recovery in this suit would bar.*"

Precisely so here; if Lawson failed against Nisbet, he would be entitled to maintain his action against Grimes, as an endorser on the note; and the right of action would be taken away by a recovery against Nisbet, *whether the money was collected or not;* for the record would show, (and the plaintiff would be bound by his admissions in the writ and the judgment thereon,) that the attorney of the plaintiff had already collected the debt of some of the parties to the paper. It would seem, therefore, that the interest of the witness was direct and immediate in the event of the suit.

In a suit, by the holder of a promissory note, against an individual, upon his guaranty of the debt, the *endorser* is not a competent witness for the plaintiff; *for if the endorsee should fail in his suit upon the guaranty, the witness would be liable upon his endorsement.*—2 *Phil. Ev. note* 93; *Mott* vs. *Hicks*, 1 *Cow. Rep.* 513.

And I apprehend it will be found in most, if not in all the cases, where witnesses have been admitted to testify, who were *apparently interested*, either that they had no interest in fact, or else that their interest was equally balanced; and that, without a release, it would, as a general rule, be found unsafe to permit a witness to discharge himself from liability, by fixing that liability upon the defendant, in the present action. There is much pith in the rule, as laid down in the old authors, upon this head of evidence. "Now, where a man who is interested in the matter in question, would also prove it, it is rather a ground for distrust, than any just cause of belief; for men are generally so short-sighted, as to look at their own private benefit, which is near to them, rather than to the good of the world, which is remote; therefore, from the nature of human passions and actions, there is more reason to distrust such a biased testimony than to believe it; it is also easy for persons who are prejudiced or prepossessed, to put false and unequal glosses upon what they give in evidence; and therefore the law removes them from testimony, to prevent their sliding into perjury; and it can be no injury to truth, to remove those from the jury, whose testimony may hurt themselves, and can never induce any rational belief. No man can be a witness for himself, who is interested in the matter in question; but he is the best witness that can be against himself."—*Peake's Law of Evidence*, 122.

The only remaining inquiry upon this branch of the exceptions is, whether, independent of Grimes's testimony, there was sufficient evidence before the jury to warrant the verdict? In the statement of facts which I have already submitted, I took occasion to include a brief of the evidence, foreseeing that it would become important in the connection. It is needless to recapitulate it. Grimes is the only witness who proves *the amount* of money paid to Nisbet. And without this, there is nothing to sustain any of the counts in the declaration. And as Grimes is

an incompetent witness, and the other testimony does not justify the verdict, it must be set aside, and a new trial granted.

There are yet several questions, growing out of the charge of the judge, of more or less weight, which we are compelled to dispose of,. as they will likely arise again in the future trial of the cause. And one is, whether or not Lawson, as the agent of the insurance company, could maintain an action on the note in his own name? It is in vain to undertake to harmonize the authorities on this subject ; they are quite irreconcilable, and so admitted to be in *Dugan* vs. *The United States*, 3 *Whea. Rep.* 172. The property in this note was originally in an insurance company in New York. Lawson, the plaintiff, was the secretary of the company ; that, as agent of the owners *for collection*, he had a right to sue thereon in his own name, is, we believe, the general and better doctrine.—13 *East's Rep.* 135 ; 12 *Mod. Rep.* 193 ; 6 *Carr. and Payne,* 70 ; 9 *Bar. and Cress.* 208 ; 9 *Mass. Rep.* 423 ; 7 *Pick.* 40 ; 15 *Martin Rep.* 291 ; 3 *Wheat. Rep.* 172, 180 ; 25 *Wend. Rep.* 416 ; 2 *Ter. Rep.* 313. In *Story on Agency*, sec. 228, it is said, that the title of the holder, in cases of negotiable instruments, is derived from the instrument itself ; and that negotiable instruments, when endorsed in blank, (*as was the case here*,) or payable to bearer, are a *sort* of currency, and pass in the market without inquiry as to the title of the holder ; and the *negotiability of all instruments would be* greatly impaired, if not *wholly destroyed, by a different doctrine.*

And again : the same author, in his work on bills of exchange, sec. 224, says : " Every party endorsing a bill, either in blank or in full, and without restriction or qualification, thereby passes the interest and property in the bill to the endorsee, if he take it for value. *If he take it as agent, he has an election to treat it as to the other parties to the bill, either as his own* property, *or as that of his principal ;* but *as to that of the latter,* (the principal,) the endorsement creates no property whatever in him, (the agent,) and the principal may revoke the authority, and reclaim the bill from him as long as it remains in his possession.—*Chitty on Bills.* ch. 6, pp. 255, 256, 260, 268, (8th ed. 1833,) *Ib.* ch. 9, pp. 428, 429 ; *Bayley on Bills*, ch. 5, sec. 2, pp. 132, 133, 143, 144, (5th ed. 1830 ;) *Ib.* ch. 10, p. 445 ; *ex parte Baldwin*, 19 *Ves.* 232. And this text, the editor, in a note, thinks contains the true principle, although he admits there is some discrepancy in the authorities.

The contrary doctrine will be found strongly stated in some of the authorities referred to by the learned counsel for the defendant in error, particularly in the cases of *Bryant* vs. *Owen*, 1 *Porter's Rep.* 201 ; *Gilmore* vs. *Pope*, 5 *Mass. R.* 491 ; and in *Thatcher* vs. *Winslow*, 5 *Mason's Rep.* 58 ; *Gunn* vs. *Cantine*, 10 *John. Rep.* 387 ; and *Sherwood* vs. *Roys*, 14 *Pick. Rep.* 172, not noted on counsel's brief.

In this conflict of law we shall hold, that the agent of a negotiable note, payable to bearer or endorsed in blank, may sue thereon, in his own name, *as may all others* who are in possession of such paper—*possession* being presumptive evidence of title. And that the right of the plaintiff can only be questioned, when it becomes necessary for the purposes of defence. And, consequently, that the court below was right in ruling, that Lawson, as the agent of the New York Insurance Company, had the right to maintain this action in his own name.

The defendant then requested the court to charge the jury, that if they should believe, from the testimony, that Gambrill was the general agent of the plaintiff, (Lawson,) in reference to the note made by Phillips and placed in defendant's hands, that then said Gambrill might well direct the application of the money collected thereon ; and that if Nisbet paid the money to any person, under the order of Gambrill, that he, Nisbet, might well do so, and that it would be a good discharge. The court refused to give the charge as requested, but charged, that he, Gambrill, might have been the general agent of the plaintiff ; yet, being his agent, he had no right or power to order the payment of money collected to demands against him, Gambrill ; and that if Nisbet paid the money under such directions from Gambrill, with the knowledge that Lawson was the owner of the note, he was not thereby discharged, but was still liable.

The charge given, as above stated, and the refusal of the court to give the instructions as required, are assigned as causes of error.

It is undeniably the privilege of either party to claim from the judge trying the cause, the benefit of his instructions to the jury. And if they are *not given* or *wrongfully* given, and the jury should err, and find for the other party, a new trial ought to be granted, if injustice has been done. Courts should be cautious, however, lest they be circumvented themselves, and mislead the jury. And if counsel ask for the statement of an abstract principle, the judge in submitting it should so qualify it, as to prevent the jury from supposing that it necessarily applies to the case of him who calls for it. The instructions prayed, should always have reference to the state of the pleadings, and of the evidence before the court.

Now, what was the actual testimony, to which this charge had reference ? That Nisbet had collected the money on Phillips' note, and paid it to the creditors of one Gambrill. Counsel for the defendant prayed the court to instruct the jury, that if Gambrill was the general agent of *Lawson*, he had the right to direct Nisbet, the attorney of Lawson, to pay the fund over to any third person, and that such payment would be a discharge to him. As a general proposition, this might be true. But did the facts authorize the instructions prayed for ? Certainly not. And the Judge was right in refusing to submit the abstract principle, in a form which might induce the jury to believe that it could, by any possibility, be the law of the present case. The judge, therefore, very properly states the point in the only way in which it could be of any practical purpose, and charges the jury, that if Nisbet paid the money to the *creditors* of Gambrill, knowing at the same time *that it belonged to Lawson*, it would not protect him from liability to Lawson, notwithstanding he was authorized to do so by Gambrill, the agent of Lawson.

We are satisfied, then, on a full view of the case, that the Circuit Court was right in withholding the instructions prayed for. Nor are we less clear upon the other branch of the complaint, namely, that he committed no error in charging the jury as he did.

Admitting that Gambrill was the *general* agent of Lawson, in respect to Phillips' note, how would *third persons* be affected by it ? The utmost, then, that could be pretended is, that persons dealing with him would have a right to consider him clothed with all the power usually accompanying such an employment. Even under this view of it, it would be exceed-

ingly doubtful whether Nisbet would be warranted in applying the money to the agent's debts. But the plaintiff's case goes much further. It brings home actual notice to Nisbet—*notice* upon the assumption in the charge. And it is well settled that the authority of a *general* agent, will not protect third persons *with knowledge*. Neither public policy nor sound ethics require that he should be protected as an *innocent* person, who *knows* that the agent is abusing his trust, and misapplying his principal's money. " The agent has no right to change the security of his principal for the debt, or to make himself the debtor to the principal, for the like amount, in lieu of the person who owes the debt, without the consent of the principal, expressed or implied, to that effect. Thus, for example, if an agent has authority to receive for his principal a debt due from a third person to him, and the agent owes the like amount, or greater, to such third person, he has no right to substitute himself as debtor to the principal, giving him credit for the amount, or to set off the debt due by him to such third person; against the debt due by the latter to his principal."—*Story on Agency*, sec. 413. If Gambrill himself, the supposed agent, could not do this, Nisbet, the employee, or substitute of Gambrill, could not for him.

" So, upon similar grounds, the rights of third persons will be protected when they deal with an agent, supposing him to be the sole principal, *without* any *knowledge* that the *property* involved *belongs to another person*. If an agent, employed to collect money and to remit it to his principal, should lend it to a third person, to whom he is indebted in a larger amount, the latter, *if he has no knowledge* that the money does not belong to the agent, may retain it as a set-off, in a suit at the instance of the agent, on account of his individual transactions with said third person."— *Ibid.* 444.

A factor cannot pledge the goods of his principal for his own debt.— *Paterson* vs. *Tash*, 2 *Str.* 1178; 5 *Term Rep.* 606.

A broker has no lien on a policy, for the general balance of his own account with the agent, *if he knew at the time* that the policy was effected for another person.—*2 East*, 523.

If the agent discloses his principal at the time, it is clear that he cannot pledge the property of such principal to another, with whom he is dealing, for his own private debt. Suppose the agent had said to the defendants: " It is true, I am agent for another, but nevertheless you may retain the money due to him for my debt." Could such a transaction be sustained? But that which is now contended for, is, in effect, the same thing.—*Per Lord Kenyon, C. J., in Maanss* vs. *V. Henderson*, 1 *East*, 338.

We concur, then, with the court below, that if Nisbet paid the money collected on Phillips' note to the creditors of Gambrill, (as he admitted he did to Cooper,) with the knowledge that Lawson was the owner thereof, (and this was a matter of fact, to be found by the jury from the filing of the writ by Nisbet in Lawson's name, and recovering judgment thereon in his behalf, and other circumstances,) he was not *thereby* discharged, but was still liable.

The last point which we are called upon to notice is, was there misdirection in the judge in charging the jury that, if they found for the plaintiff, they should return a verdict for so much damages; and that the

Nisbet *vs.* Lawson.

measure of damages in this case was the amount of money collected by the defendant, and interest thereon from the time it was demanded; and that the verdict should be for such sum entire, and not for so much principal and so much interest?

This opinion has already been necessarily extended to such great length, on account of the *number*, to say nothing of the *weight* of the questions involved, that we shall be compelled to abridge *this*, as we have done many other portions of it.

The *verdict* is, *in all cases of assumpsit*, found for *damages* sustained by the plaintiff in consequence of the breach of the promise of the defendant, whether it was express or implied.—2 *Tuck. Com.* 160.

In all actions which sound in *damages*, the jury seem to have a discretionary power of giving what damages they think proper.—*Bac. Abr. Damages, D.* 1.

In computing damages, in some cases, interest will be added to the principal.—1 *Saund Plead. and Evi.* 149.

Interest may be given by the jury by way of damages for wrongfully withholding a debt.—3 *Bing.* 353.

Interest is recoverable in cases where the party has used the money; *as where an agent pays the money* of his principal into his banker's hands, and uses it as his own.—2 *Esp. Rep.* 702; 9 *Mass. R.* 28; 2 *Bing.* 4.

In some cases, damages, in the nature of interest, are recoverable.— 9 *Price*, 134.

Interest is allowed in trover for a note or bill of exchange.—2 *Car. and Payne* 358.

It is apparent, therefore, that at common law, the verdict rendered in this case would be unobjectionable. But 'the 28th section of the judiciary act of 1799 is relied on, which declares, " that no verdict shall be received on any *unliquidated* demand where the jury have increased their verdict on account of interest, nor shall any interest be given on *any open account* in the nature of damages."—*Prin. Dig.* 212.

And this brings up necessarily the long and much-mooted point: Are all demands " *open accounts* " and " *unliquidated*," unless evidenced in writing? *We hold not;* and may, at a future time, assign at large our reasons for this conclusion. We understand, by *liquidation*, an amount *certain* and *fixed*, either by the act and agreement of the parties or by operation of law; a sum which cannot be changed by the proof; it is so much, or nothing; and that the term does not *necessarily* refer to a *writing*. An *open account* is the reverse of this. And this definition is warranted not only by the most approved lexicons, and by *common* as well as *legal* parlance, but imperiously demanded by the principles of justice.

In *Blaney* vs. *Hendrick*, (2 *Wils.* 205,) it is said, " if on a judgment by default and writ of inquiry, the plaintiff proves an account stated and a balance then due to the plaintiff, the jury should give interest for the *sum so settled*, from the time of its being so liquidated." And *per cur.*, in the same case, " where a note is due, it bears interest from the time; where money is lent, it bears interest from the time it became payable; but for money due for goods sold, (that is upon ' *open accounts*,') no interest is allowed."

Numerous other references might be made, to show that in legal, as well as ordinary language, *settled* or *ascertained*, and such like words, are used

as synonymous with *liquidated;* and that by the term "*open accounts,*" are meant, those debts which are subject to future adjustment, and which may be reduced or modified by proof. And in expounding these prohibitory clauses in the statute, in which the terms "*unliquidated*" and "*open accounts*" occur, we must unquestionably suppose, that our Legislature had regard to these phrases *as then in use,* and employed them accordingly; and hence the manifest propriety of searching for their true meaning, in the sense in which they were used and understood in the books at the time of their adoption.

To adopt the contrary construction, would be to decide that even securities could not recover interest on the money advanced for their principal; and every man's moral sense of right and wrong would oppugn such a doctrine. We should be slow to impute such injustice to our lawmakers.

In Pennsylvania, it is now settled that interest is recoverable for money lent.—1 *Binney*, 494. It seems to have been formerly held, says C. J. Tilghman, that interest was not allowable for money lent and advanced. That opinion gradually declined, upon more mature reflection; and, without citing particular cases, it may now be safely affirmed that, for a considerable time, the settled law has been, that interest is recoverable for money *lent* and *advanced;* also, for a balance ascertained, (4 *Dall.* 287) and *against a man who receives the property of another, and holds it against his consent.*—3 *Bing.* 121.

Interest is allowed in New York where money is paid upon a contract which has been rescinded by the other party.—5 *John. Rep.* 88. And it may or may not be recovered there, according to the circumstances.—3 *Caines' Rep.* 266. And *it is to be recovered where one converts the money of another to his own use, from the time when it ought to have been paid over.*— 9 *John. Rep.* 71.

The same doctrine obtains in South Carolina, and in every part of the Union. In *Black* vs. *Goodman* and *Miller,* (1 *Bailey's Rep.* 201,) the defendants refused to pay over to the plaintiff a sum of money had and received to his use, unless he would release a suit then pending against them, for a distinct matter. The court refused to set aside the verdict, which (as in the case under discussion) was increased by the interest, upon the ground that the plaintiff was entitled to recover interest from the time of the demand.

And upon these broad grounds of reason, justice and equity, it has been generally held throughout this State, that interest should be allowed on all *liquidated* sums, *from the instant* the *principal* became payable. Nor do we believe that this interpretation conflicts with either the letter or spirit of our own legislation. And were it my privilege to make the law, instead of to declare it, I would most indubitably settle it the same way.

We are of the opinion, then, that there is nothing in this assignment, and that the judgment be reversed, and the cause remanded, upon the sole ground of the reception of Grimes' testimony, without which there could have been no recovery.