No 39.—JAMES C. FREEMAN, plaintiff in error, *vs.* DAVID S. CAMPBELL, defendant in attachment, and GREENVILLE MASONIC LODGE, garnishee, defendants in error.

A. stipulated with B., that B. should build him a house for $2,650, payable in five installments: $500 when the house should be framed and raised; $500 when the house should be enclosed and roofed; $500 when the floors should be laid and the partitions set; $500 when the ceiling should be put up, and all the carpenter's work done; $650 when the painting should be done, and the keys delivered.

*Held,* that by this stipulation, what B. was to do, was but a single job of work to consist in the building of a whole house, for $2,650, not five separate jobs, to consist in the building of the parts of a house distributed into five certain parts, with a separate price to each part.

Attachment and Garnishment, from Meriwether Superior Court. Tried before Judge BULL, at February Term, 1857.

James C. Freeman sued out an attachment, returnable to the Superior Court of Meriwether county, against David S. Campbell, for the sum of five hundred and fifty-two dollars.

The Greenville Masonic Lodge, No. 57, was served with summons of garnishment.

The garnishee, by its committee, answered, setting forth that they employed, by written agreement, the defendant Campbell, to build a Masonic Female College, in the town of Greenville. That by the terms of said agreement, Campbell was to build said house, furnishing all the materials, (except mason's) for the sum of $2,650, payments to be made as follows, viz: Five hundred dollars to be paid to him when the house was framed and raised; $500 when the building was enclosed and the roof put on; $500 to be paid when the floors were laid and partitions set; $500 more when the ceiling was finished and all the *carpenter's* work completed; and when the painting was done and the keys delivered the balance $650 was to be secured by the obligation of the committee, and to be paid the January thereafter. That in pursuance of said contract, Campbell entered on the

work, and went on to frame and raise the house, enclosed the same and put on the roof, at which period of the work, and before the floors were laid and partitions set, they paid him the sum of $1,596 07, being more than was due, as they said, by $596, when said Campbell left off the work and abandoned the contract, and left them to finish the house, which they did at considerable expense; and, under this state of facts, insisted that they were not indebted to said Campbell, or had any effects of his in their hands.

This answer plaintiff traversed, alleging that said Campbell had done a large amount of work, and furnished a quantity of materials, for which they had not paid him, and for which they were still indebted to the amount of $1,000.

On the trial of the issue formed on this answer and traverse, the plaintiff offered in evidence, the depositions of Gilman J. Drake, to prove the amount and value of the work done and materials furnished by Campbell, which evidence was objected to by respondent's counsel; the Court sustained the objection and excluded the testimony; but allowed plaintiff to prove the amount and value of work done and materials furnished, after the third condition complete; and plaintiff excepted.

*Wiley F. Jones*, witness for plaintiff, testified, that after Campbell left, the committee took possession of the building, completed it, and appropriated it to their use. Also, that the work done by Campbell after third condition finished, was worth $200.

Plaintiff proposed to prove further, that the work done by Campbell, for which he had not been paid, was worth $300; that one of the committee had said that the house could be finished for $650, and also that if Campbell had worked three weeks longer, he would have been entitled to another $500, all of which, on objection, was rejected by the Court, and plaintiff excepted.

The plaintiff offered to prove that the house was finished

after Campbell left, at the actual cost of $800, which was also rejected, and plaintiff excepted.

The Court charged the jury, that the keeping possession of the house, by the Lodge, after the abandonment of the work by Campbell, was not such an acceptance, as amounted to a recision of the contract on their part. That Campbell's abandonment of the work did not effect a recision of the contract, unless the Lodge consented to, or acquiesed in it; and that the Lodge was liable for any materials belonging to Campbell, which they had used and appropriated.

Plaintiff's counsel requested the Court to charge, that if after Campbell left, the Lodge took possession of the work done, and materials furnished by him, it was an abandonment of the contract by them, and evidence of their acquiescence in Campbell's abandonment, and they are liable for the work done and materials furnished, after deducting the amount paid to him. And further, that if a special contract was made between the parties to build said house, and Campbell left the same before completing it, and respondents took possession of the building, and appropriated to their use the work and materials which had been done and furnished by Campbell, then they are liable to pay to him the value of the work so done and materials so furnished; which charge the Court gave, with this qualification, "that if work is to be done on property already in one's possession, according to a specified contract, and for a certain price, and the undertaker abandons it, it is not taking possession of his work, because he is already in possession," to which plaintiff, by his counsel, excepted.

The jury returned a verdict for respondents. Plaintiff moved to set aside the verdict and for a new trial, on the grounds above excepted to.

The motion for new trial was overruled, whereupon plaintiff's counsel excepted, and tenders his bill of exceptions, &c.

HALL, for plaintiff in error.

B. H. HILL and McMATH, for defendants in error.

*By the Court.*—BENNING, J. delivering the opinion.

Is it the meaning of the contract, that Campbell was to do the work as one job, for one sum, or as five jobs, for five sums? That he was to build the house and furnish the materials, (masonry materials excepted,) as one job, for $2,650, or that he was to frame and raise the house as one job, for $500; to enclose and roof the house as a second job, for $500; to lay the floors and set the partitions as a third job, for $500; to put up the ceiling and do the remainder of the carpenter's work, as a fourth job, for $500; to paint the house and deliver the keys to the Lodge, as a fifth job, for $650, payable on a credit?

If the meaning of the contract is, that Campbell was to do the work as one job, for one sum, then, although he left the work in an incomplete state, still, the Lodge was bound to pay him for it whatever it was worth, estimated at the contract rate of value; because the Lodge *accepted* the work in its incomplete state. If therefore, the work was in a state of half-completion, the Lodge was bound to pay him $1,325, if in a state of three-fourths completion, the Lodge was bound to pay him $1,987 50. In a word, the sum which the Lodge was bound to pay him, bore the same relation to $2,650, that the house in its incomplete state would have borne to the house in its complete state, if the house had ever been advanced to a complete state.

If the meaning of the contract was, that Campbell was to do the work as five jobs—the five aforesaid—and if some of these jobs were completed by Campbell, before he quit the work, and others *not*, then, the lodge was bound to pay him for the completed jobs the full prices agreed on for them, and to pay him for the others, such sums as bore to their respec-

tive prices the same relation which the respective jobs, in their incomplete state, would have borne to the same jobs, respectively, in their complete state, if they had been advanced to a state of completion.

On the first hypothesis, the proper question for Court and jury would be: what was the *contract* value of the work in its incomplete state. That is, it would be this: if the work in a state of completeness would have been worth $2,650, what was it worth in its state of incompleteness?

And any evidence going to show, that if the work, in a state of completeness, would have been worth $2,650, the work in its state of incompleteness was worth so much, or so much, would have been admissible.

And, as it is to be presumed, *prima facie*, that the contract was a fair contract, it is to be presumed, *prima facie*, that $2,650, the *contract* value of the work, was the *real* value of the work. Therefore, any evidence going to show the *real* value of the work in its incomplete state, would have been *prima facie* evidence, going to show the *contract* value of the work; and, consequently, would have been proper evidence to be admitted.

Now, the Court below, it seems, thought, that it is the second of the two hypotheses that is the true one; but this Court thinks that it is the first.

This Court thinks that the meaning of the contract is, that Campbell was to do the work as a single job, for the sum of $2,650, payable in installments.

The contract is headed thus: " Specification for the labor and materials to erect the Masonic Female Institute, at Greenville Georgia."

Then follow specifications under these titles: " Dimensions," " Frame," " Weatherboarding," " Cornice," " Roofing," " Windows," " Doors," " Furniture," " Trimmings," " Rooms," " Partitions," " Ceiling," " Balcony," " Conditions," " Stairs and outside Steps," " Tinner's Work," " Painting," " Mason's Work," " Base or Wash-board."

The specification under the title "Conditions," is in these words: "The whole of the materials, (except Mason's materials,) to be furnished by the builder, and the work to be done in a workmanlike and substantial manner, for the sum of twenty-six hundred and fifty dollars, the payments to be made in the following manner: when the building shall be framed and raised, then the sum of five hundred dollars shall be paid; when the house shall be enclosed and the roof put on, then the second sum of five hundred dollars shall be paid; when the floors shall be laid and the partitions set, then the third sum of five hundred dollars shall be paid; when the ceiling is put up and all the carpenter's work shall be done, the fourth sum of five hundred dollars shall be paid; when the painting shall be done and the keys delivered, then the obligation of the undersigned for the payment of six hundred and fifty dollars on the first day of January next, shall be given; the whole of the work to be under the supervision of a superintendent, to be appointed by the Building Committee, who shall give the orders for the money when due."

Now, much of all this seems to be entirely inconsistent with the work's being a work in five jobs, each job with its separate price; whilst none of it is inconsistent with the work's being a single job, at a single price. True, the price is to be paid in five sums, but the reason for that might well be, that the price *fell due* in five installments. It certainly is not said of any one of the sums, that such sum is to be the *measure of the value* of the part of the work on the completion of which the sum was to be paid. Nor are the specifications headed as specifications for the *parts* of a house, distributed into certain parts; nor are they in themselves, suitable for the parts of a house, distributed into any parts. Indeed, the house is not distributed into five parts, or into any number of parts. The specifications are headed as specifications for a house, as a whole; and they are suited to a house as a whole.

We think, therefore, that it was the meaning of the contract, that Campbell was to do the work as a single job, at the price of $2,650. Therefore, as has been above stated, the proper inquiry for the Court and jury was, what was the contract-value of the work, in its incomplete state ; and, on that inquiry, as contract-value, and *real* value may be, *prima facie*, taken to be the same, any evidence going to show the real value of the work, in its incomplete state, was admissible. That value being ascertained, the question whether the Lodge as garnishee, owed Campbell any thing, was to be determined by comparing the value thus ascertained, with the amount of the payments made by the Lodge to Campbell.

This being so, we think, that the Court below erred in not allowing the plaintiff to prove what was the value of the work done by Campbell in its incomplete state; and in not charging the jury, that if the value of the work in its incomplete state, the value estimated by the contract rate of value, exceeded the payments, the Lodge was still indebted to Campbell for the excess.

Therefore a new trial is ordered.

Judgment reversed.