McAuliffe v. Bailie et al.

1. The act of October 19th, 1891, to provide for additional security to material men and laborers, requires 25 per cent. of the contract price to be withheld by the owner from the contractor, but does not require that 25 per cent. of all earnings for work actually done in the progress of erecting the building or other structure shall be withheld. Partial payments may be made to any extent provided they amount in the aggregate to not more than 75 per cent. of the total contract price.

2. There was no abuse of discretion in granting the interlocutory injunction complained of.          Judgment affirmed.

May 25, 1892.

Injunction. Material men and laborers. Before Judge Roney. Richmond county. At chambers, February 23, 1892.

McAuliffe filed a motion in the nature of a demurrer to dissolve the restraining order granted on the petition of Bailie, trustee, and Mrs. Bailie, on the grounds:

(1) that it appears by the petition that the plaintiffs are not entitled to the relief prayed for against this defendant; (2) that it appears by the petition that the plaintiffs claim an interest in themselves, and deny a duty, and yet call upon defendant to interplead with his co-defendants; (3) that it appears by the petition there is no privity of estate or title or contract between all the defendants; and (4) that it appears by the petition there will be undue and illegal advantage given to some of defendants if the petition is sustained. After argument upon said petition and motion, the judge "ordered that the restraining order heretofore granted be continued." To this order McAuliffe excepted.

The petition was against Livingston, McAuliffe, the Augusta Lumber Company, Crawford and ten others, alleging as follows: On November 12, 1891, petitioners employed Crawford to complete eight houses, only three of which were started, to wit: number one for $425, number two for $440, and number three for $475. He was to finish two of them in thirty days and the other in two weeks thereafter, and he was to furnish all the material. Petitioners were to pay one fourth when the frame work was up and brick work done (except chimneys), one fourth when weatherboarding was on, windows in and floors laid, and the third and last payment was to be made when the house was finished. Crawford began work but soon found he was unable to procure material in large quantities, and the Augusta Lumber Company refused to deliver material in quantities sufficient to erect the houses, unless petitioners would be responsible therefor, that is, really become the purchasers of the lumber. Thereupon they agreed in writing to pay that company $650 for lumber so furnished by it, and are liable to it, and it has no claim upon Crawford for that amount. The same facts are true in reference to Nichols, a brick-mason, to whom petitioners

were obliged to become responsible for $315 for brick and masonry work to be done on the three houses, which sum petitioners have paid and are paying as the work is done. ˙ Except as above, Crawford furnished the labor and bought the material for the three houses, petitioners having no knowledge but that he was paying for the same and no notice that any of it was unpaid for. As the work progressed they paid him $300 ($60 on November 21st, $21.25 on November 23d, $132.50 on December 5th, and $76.25 on December 12th). House number one was nearly complete, number two had the frame work up, and number three had the sills laid upon the foundation. At this juncture Crawford, on December 21st, wrote to petitioners that it would be impossible for him to go any further with their house, and that he would have to throw up the job as he was not able to finish the work. Soon afterwards sundry laborers and parties, claiming that they had done work for and sold material to Crawford, began to make claims against petitioners for payment. Petitioners informed them that they owed Crawford nothing, and that he had thrown up the job and thereby greatly damaged them. Livingston has filed suit in a justice's court for $28.95 against Mrs. Bailie on an account for paints, etc., and, so far as the suit shows, it is one for material bought by her. Outside of the pleadings therein, petitioners learned that the bill sued for was sold by Livingston to Crawford and charged to him on Livingston's books, but that Livingston claims that Mrs. Bailie is liable to him for the bill by reason of the act of October 19, 1891 (Acts 1890-91, page 233). Neither of petitioners ever bought or in any wise became liable for Livingston's bill, unless the liability can in some way attach under this act, which they deny. Prior to the filing of that suit Livingston asked one of petitioners, Bailie, what had become of the paint and other material he sold Crawford, saying that he did not believe half of it had been

used on the houses Crawford was building for petitioners. Bailie thereupon examined house number one on which the material, if used, must have gone, and believes Livingston's statement that not half of it was so used is true. Livingston's bill includes several items, such as paint-brushes, amounting to $4.85, which in no event could have been used, in the sense of the law, as material in the houses being erected by Crawford; and if they were furnished they are still in Crawford's possession, unless he has disposed of them. He sold a portion of the lumber which he purchased with a view of using upon petitioners' houses, and hauled off lumber and other material, the amount of which they are unable to state; and while he may have had the legal right to sell and haul off such material as he purchased to be used in their houses, as he was legally the owner of such purchases, still it takes away all equity and claim of every kind which the sellers might have against petitioners' property. The legislative act referred to is applicable only where the contractor substantially complies with his contract, and the party giving out the contract is not liable to retain twenty-five per cent. on partial payments. The Augusta Lumber Company claims that Crawford is indebted to it $106.72 for material furnished over and above the amount petitioners contracted to pay for, and has notified them that it will undertake to hold them responsible for said amount. McAuliffe has notified them that Crawford is indebted to him about $40 for shingles sold to him and alleged to have been used on petitioners' property. The other ten defendants have notified petitioners that there is due them about $29 for labor performed on the houses. Crawford is totally insolvent, and by failing to carry out his contract has damaged petitioners $563.69, which is the total of what it has cost and will cost them to complete the three houses, and to pay the amount for which they agreed to become responsible to the Augusta Lumber Com-

pany and Nichols, etc. If Livingston is allowed to proceed with his suit and the ten laborers bring suits, petitioners will be put to cost and expense in defending them, and should judgments be obtained against petitioners and they should appeal or *certiorari*, they will be obliged to pay costs; these ten laborers, as well as Crawford, being totally insolvent. If petitioners are liable under the act referred to, which, under the circumstances of this case, they deny, it is to the creditors of Crawford furnishing material, and particularly those who have given notice, *pro rata*, and no one creditor can take more than his proportion of the twenty-five per cent., if petitioners are liable for any part of the same. They do not know all the parties to whom Crawford may be indebted. They have had notice from several colored persons since Crawford threw up the job, that he owed them $1.50, $2.50, $3.00, etc. Waiving discovery, the prayers are, that Livingston be enjoined from proceeding with his suit, and the other defendants be enjoined from bringing any action against petitioners on account of any claim due them by Crawford; that said parties, in order to prevent a multiplicity of suits, be required to come in and interplead among themselves, and settle in one action any rights they may have against petitioners or against each other; that petitioners have judgment against Crawford for the amount he has damaged them by his breach of contract; that he answer, not under oath, as to whom and the amount he may be indebted for labor and material used by him upon petitioners' houses; that all parties having claims against him, when discovered, be made parties to this petition and restrained from entering any suit against petitioners; and that a perpetual injunction issue against the defendants, and a decree be entered that the petitioners are not liable.

M. P. Carroll, for plaintiff in error.

J. S. & W. T. Davidson, *contra*.