## HUNNICUTT & BELLINGRATH CO. *v.* VAN HOOSE *et al.*

1. When by the terms of a contract one agrees to furnish all material and labor for the construction of a building, and to turn over the same in a finished state to another, on payment of a stipulated price, such a contract is an entire one, and is not to be held as divisible because it contains a stipulation that when the building has arrived at a certain stage of completion the owner may suspend further work, and that, if he elects to do so, a stated sum is to be the compensation for the labor done and material furnished. When in such a case a building had progressed to

the stage last indicated, and the contractor abandoned the work against the will of the owner, the gross sum fixed as the price for completing the entire work is the true "contract price," and not the sum contemplated to be paid in the event the owner suspended the work at a period before completion.

2. The statute which required the owner, who gave out a contract for the erection of a building on his land, to retain twenty-five per cent. of the contract price for the benefit of laborers and materialmen, did not prevent such owner from making partial payments to the contractor from time to time as the work progressed, provided the aggregate of such payments did not exceed seventy-five per cent. of such contract price; and if, before the completion of the building according to the contract, the contractor abandoned the work and left the building uncompleted, it was the right of the owner to take possession of the same and complete it. If in doing so the amount required for completion when added to the sums properly paid to the contractor exceeded the original contract price, such owner was not liable to a materialman for any part thereof.

FISH, J., dissenting.

Argued March 14, — Decided July 13, 1900.

Complaint. Before Judge Russell. Hall superior court. May 5, 1899.

*Arnold & Arnold* and *Dean & Hobbs*, for plaintiff.

*H. H. Perry, J. C. Boone*, and *G. H. Prior*, for defendants.

LITTLE, J. The Hunnicutt & Bellingrath Company instituted an action against Van Hoose and Pearce, in which they alleged that the defendants owned certain land in the city of Gainesville, and that in the spring of 1896 such owners entered into a contract with G. W. Foote, who was a contractor, to erect on said land a large building to be known as an auditorium, and agreed with Foote to pay him the sum of $14,200 for said building complete. It is further alleged that such contract was in two parts; that is, that when certain portions of the work were done the owners were to pay Foote ten thousand dollars, and if the remainder was completed, the remaining sum of $4,200 was to be paid. The petitioner further alleged that it did certain work on and furnished certain material for the building, under a contract with Foote, to wit, that it furnished all the galvanized iron, tin, slate work, and sky-light for the building; for which Foote agreed to pay it $1,148, which was a fair market price for the same; that $400 of said sum has been paid, leaving an indebtedness of $748 to the petitioner for said work and material. It is further alleged, that

after the contract had been entered into between the owners and Foote, the latter commenced the work, and did finish the building substantially so far as to have the brick walls put up and all stone, terra cotta, galvanized iron, etc., pertaining to the exterior work, so as to be entitled to the payment of the first-named amount of ten thousand dollars; and that thereupon the owners did pay to Foote the full amount of ten thousand dollars, without reserving twenty-five per cent. of said contract price, and without requiring any affidavit from the contractor, and without obtaining the consent of the petitioner; that at this point Foote abandoned his contract without completing the building according to the stipulations; and that the owners thereupon undertook to complete the building themselves, and did expend thereon the full sum of $14,200, including the sum paid to Foote, and did therefore use on said building and the completion thereof the full amount of the contract price without reserving any sum whatever; and in this manner they obtained from the petitioner said material and labor, and have now no sum of money held back and reserved to pay for the same. The plaintiff prays a judgment against the owners of the property for the amount due it for labor performed and material furnished in the construction of the building as set out. Attached to the petition is a copy of the contract entered into between Van Hoose and Pearce, signing as the Georgia Female Seminary, and Foote, for the construction of the building. It is dated April 1, 1896; and, by its terms, Foote undertook, in consideration of the sum of $14,200, to build, finish, and deliver on or before September 1, 1896, a building for a conservatory of music, according to specifications made a part of the contract; and to provide all labor and materials of every kind for the completion and finishing of said work. Van Hoose and Pearce undertook on their part, for the faithful performance of the terms of the contract, to pay Foote the sum of $14,200 in the following manner: to pay on Saturday of each week during construction a sufficient amount to meet the pay-roll of the laborers for the week; and, on the first day of each month, a sufficient amount to cover seventy-five per cent. of the labor and material actually in the building. The last instalment was to be paid in thirty days after

the work was fully completed and accepted by the owner, free from all claim by lien or other attachments. It was further provided, if the contractor should, at any time during the progress of the work, refuse or neglect to supply and furnish a sufficiency of material or workmen, or cause any unreasonable neglect or suspense of the work, or fail or refuse to comply with any of the articles of this agreement, that the owners should have the right and power to enter and take possession of the premises and provide material and workmen sufficient to finish the work, and the expense of so doing should be deducted from the amount of the contract. There was a stipulation in the following language: "It is mutually agreed between the parties of the first and second parts, that, in consideration of ten thousand dollars, the party of the first part is to complete all brick walls, put in all stone, terra cotta, galvanized iron, all O. S. doors, all windows, sash, floor linings, iron columns, and all necessary partitions, to lay all floor linings and everything pertaining to exterior work except stone steps; and that when this much of the building is completed the work may be suspended until such time as the party of the second part may decide to finish the building. If work is suspended for more than thirty days, the twenty-five per cent held back by the party of the second part shall become payable by the party of the first part turning over above-described work free from lien or other attachment."

To this petition the defendants filed a general demurrer, which on the hearing was sustained, and the petition dismissed. To this ruling the plaintiff excepted.

1. This action was based on the provisions of the Civil Code, §§ 2802, 2803, which, in effect, provide that every person who shall give out a contract for the construction of any house shall retain twenty-five per cent. of the contract price until the contractor shall submit to such person an affidavit that all debts incurred for material and labor in constructing the house have been paid, or that the persons to whom such debts are due have consented to the payment of said twenty-five per cent.; and that, if any person shall pay said twenty-five per cent. of the contract price of the house without requiring the affidavit, he shall be liable to the extent of twenty-five per cent. of said

contract price to any materialman or laborer for material furnished or work done for said contractor in constructing said house.   These sections were repealed by the act approved Dec. 18, 1897, and are not now in force.   The plaintiff claims that its rights accrued under their provisions before such repeal; hence it becomes necessary to pass on the questions made.   It was contended for the plaintiff that, under the provisions of the code which we have recited, it was the legal duty of the defendants to retain twenty-five per cent. of ten thousand dollars; because, under a proper construction of the contract, this sum was to be paid to the contractor, separate and apart, for the completion of certain particular parts of the building.   It is also contended that inasmuch as the defendants in error paid to the contractor ten thousand dollars of the contract price, at a certain stage of the work, and, after the abandonment of his contract by Foote, used the remaining part of the full contract price in completing the building, they thereby became liable for labor and material on the building, to the extent of twenty-five per cent. of $14,200, because that sum was the entire contract price.   Two questions, therefore, are material to be considered. First, is the contract which was entered into by the parties an entire or divisible one?   Second, what legal obligations, as to the retention of a part of the contract price, were imposed upon the owner, who gave out a contract for the construction of a building on his land while these provisions of the code were in force?   We shall address ourselves to these questions, in their order.

Section 3643 of the Civil Code, which is but a reaffirmation of the common law, declares that a contract may be either entire or severable; that, if it is entire, the whole contract stands or falls together; if it be severable, the failure of a distinct part does not void the remainder; and that the character of the contract is to be determined by the intention of the parties.   Referring to the contract now under consideration, we find that it was the purpose and intention of the parties, as expressed by its terms, that an entire and completed building, to be known as an auditorium, should be constructed, in a certain way and of specified materials, by a given day, and delivered to the owners; that this contract included all the work necessary for its

completion and the furnishing of all the material which entered into a finished building; and that the consideration to be paid for the building complete was $14,200. After clearly expressing the intention of the parties to have and make a completed building and clearly stipulating what price should be paid for the same, it appears that they further agreed that, for the construction and finishing of the building to a certain extent, which was clearly defined, the owners should only be obligated to pay the sum of ten thousand dollars; and that, when "this much of the building is completed, the work may be suspended until such time as the party of the second part may decide to finish the building." There is no stipulation that the work shall be suspended at that point in its construction, but that it *may* be; but in no event could it be suspended longer than the party of the second part, that is to say the defendants, "may decide to finish it." So that it would seem, from a fair interpretation of the language used, that the right to have the work suspended at the point indicated rested with the owners, and that no option was given to the contractor to do less than to complete the building; and, unless the owners chose to suspend the work, the stipulation that ten thousand dollars should be the agreed price for the particular parts of the work named did not go into effect. Clearly, this provision was incorporated for two purposes: to give the owners the right to suspend the construction of the building when it had reached a certain stage, and to fix the compensation which the owners should pay to the contractor if they decided to suspend the work at that period of the construction. But in no event, fairly construed, does the contract contemplate that the contractor shall of his own volition stop the work until the building has been fully completed. It must follow, if this is the meaning of the contract, that it is an entire one—that is, for a finished building, with the right reserved to the owners to suspend further prosecution of the work and accept and pay for the building when it had been brought to a certain stage of completion. Unless such right was exercised, the stipulation granting it is without effect, and, in the absence of the exercise of this right, the agreement of the parties obligates the one to complete and turn over the building according to the plans and specifications, and the other to pay therefor

the price of $14,200. The petition does not allege that the own-ers exercised the right they had to stop the erection of the build-ing before its full completion, but, on the contrary, it explicitly alleges the fact to be, that when the building reached a certain stage the contractor abandoned the work; and, as negativing that such was done with the consent of the owners, it alleges that they, after such abandonment, used the remainder of the contract price not paid over, in finishing the building. So that, taken, as a whole, the contract, under the allegations of the petition, bound the contractor to complete the building for a stipulated price of $14,200. See *Freeman* v. *Greenville Masonic Lodge*, 22 *Ga.* 184.

2. For the benefit of laborers doing work on, and persons furnishing materials for, buildings erected on the land of another, this statute rendered the owner of the land liable for twenty-five per cent. of the contract price, unless he should have first ascertained, in the manner prescribed by the statute, that the claims of laborers and materialmen for improving his property had been paid. But, while thus protecting the debt of the laborer and the person furnishing the material for his building, the statute, fairly construed, did not mean to entirely ignore the rights of the owner. This court, in the case of *Gross* v. *Butler*, 72 *Ga.* 187, and also in other cases, has ruled that the statue which created a lien on the property of an owner in favor of one who furnished materials to the contractor for the erection of a house thereon, was in derogation of the com-mon law, and its requirements must be strictly followed. It is true that there is no assertion of a lien in this case, but the ob-ject of the statute was to give an extraordinary right to la-borers and materialmen in securing their debts, and the prin-ciple involved is practically the same. It must be borne in mind that there is no privity of contract, ordinarily, between the materialman and the owner. The contractual relations which exist are between the owner and the one who undertakes to furnish all the necessary material at his own expense and erect a building on the land of another for a stipulated price; but, in order to protect the one whose labor improves his land and the other whose material enters into the construction of permanent improvements thereon, the law places a burden on

the owner of the land; but it was not meant to work in an unreasonable or oppressive manner. It required that, of the contract price which he agreed to pay for the work and material by which his building was constructed, he should retain twenty-five per cent. from the hands of the contractor until satisfied in a particular manner that the debts for labor and material had been paid. It did not mean that the owner might not, from time to time, to meet the wants of the contractor and to suit his own convenience, make payments as the work progressed. Nor did the statute require that twenty-five per cent. of earnings for work actually done in the progress of the building should be withheld. This court, in the case of *McAuliffe* v. *Bailey*, 89 *Ga.* 356, ruled that under it partial payments might be made to a contractor engaged in the work of erecting a house, to any extent, provided that the amount of such partial payments made did not aggregate more than twenty-five per cent. of the total contract price. It is stipulated in the contract between the parties to this case that on Saturday of each week during the construction of the building the defendants should pay to the contractor a sufficient sum as part of the contract price, to meet the pay-roll of the laborers who were engaged in the work on the building for the week; and also that on the first day of each month they should pay an amount sufficient to cover seventy-five per cent. of the labor and material actually in the building. The petition alleges that the contractor commenced the work, and did finish the building substantially, so far as to have the walls put up, and all stone, terra cotta, galvanized iron, etc., pertaining to the exterior work, done; and that the owners, when this much of the contract had been complied with, had paid to the contractor the sum of ten thousand dollars. This, we think, they were authorized to do; for under the authority of the *McAuliffe* case supra, they were authorized to make partial payments in any manner they desired, and could not be held liable if such partial payments did not exceed seventy-five per cent. of the contract price. The statute did not contemplate that such payments might not be made, nor did it in any event require that any sum should be retained in excess of twenty-five per cent. of the contract price; it can make no difference how and to what extent advance-

ments were made to the contractor, so that on final settlement the owner had in his hands twenty-five per cent. of the amount which he agreed to pay for the construction of the building. This court, in the case of *Royal* v. *McPhail,* 97 *Ga.* 457, in construing the statute under consideration, ruled that no owner of real estate, who contracts for the erection thereon of any building, is in any event liable in the aggregate, to materialmen, laborers, or others furnishing material, labor, or other thing for any of the purposes mentioned, for more than twenty-five per cent. of the contract price which said owner has agreed to pay his contractor for the building in question.   So that, taking the sum of $14,200 as being the contract price which the defendants agreed to pay to Foote for the construction of the building, the owners, without violating the provisions of the statute, were at liberty to pay, as the work progressed, so much and any part of the contract price as they saw fit, provided such payments did not aggregate more than seventy-five per cent. of such price; and as a matter of law it must be ruled that the defendants in such payments, aggregating ten thousand dollars, did not exceed the limit prescribed.

But it is contended, inasmuch as the building was in fact completed, that under a fair construction of the statute, notwithstanding the contractor abandoned the work, the owners, must be held liable for labor and material to the extent of twenty-five per cent. of the amount originally agreed to be paid.   We do not think so.   Necessarily, to a certain extent at least, the contract for the erection of the house must be considered in fixing the rights, respectively, of the owners and the materialmen.   When the statute provided that the owner should be liable to the extent of twenty-five per cent. of the contract price to materialmen and laborers, it necessarily meant that he was liable when the contractor had performed the work which he agreed to do; for, otherwise, the statute would become an instrument of oppression and a means of working gross injustice.   The words are, that he shall retain twenty-five per cent. of the contract price, and it meant that he should retain it from the contractor — that is, that he should not pay him over the full contract price — when ? Necessarily, when the work had been finished and the contract had been

executed according to its terms by the contractor; because the contract price did not become due until the work was com-completed. The compilers of the American and English Encyclopædia of Law, vol. 15 (1st ed.), p. 51, declare that a subcontractor's remedy is limited in its extent by the terms of the original contract between the owner and contractor; citing 27 Ohio St. 132; 28 Mo. App. 639. And Mr. Boisot, in his work on Mechanics' Liens, § 85, says, "Where a contractor abandons the work at a time when there is nothing due him according to the contract, and the building is not completed under the contract, the subcontractors and materialmen in the second degree have, according to the majority of the decisions, no liens." For which proposition, he cites 23 N. Y. Supp. 604; 4 Misc. Rep. 54; 24 N. E. Rep. 447; 132 N. Y. 18; 57 Hun., 585; 54 Cal. 335. It is expressly stipulated, in the contract under consideration, that if the contractor shall fail or neglect to supply a sufficiency of material or workmen, or cause any unreasonable neglect or suspension of the work, or fail or refuse to comply with any of the articles of this agreement, the owner shall have the right to enter upon and take possession of the premises and provide material and workmen sufficient to finish the work, and the expenses of the same shall be deducted from the amount of the contract; and it seems that was exactly what was done in this case. Foote, the contractor, abandoned the work, and at the time he abandoned it there was, under the facts shown, no amount due him; and such abandonment was without the consent of the owners, who afterwards, under the contract, took possession and finished the building. It has been ruled, where such a provision was incorporated in a contract, that the failure of the contractor to complete the work does not prevent the lien of a subcontractor from attaching to the balance due after the owner's completion of the work, because in that case the building is in fact completed under the contract. See 21 N. Y. Supp. 217; 130 N. Y. 571. Mr. Boisot, however, further says (§ 85) that in such case the cost of completing the work is to be deducted from the contract price in order to ascertain the amount up to which the subcontractors may claim liens; and if such deductions, together with payments previously made to the contractor,

equal or exceed the entire contract price, then of course the subcontractors and materialmen have no lien, since there is nothing due under the contract; citing, 4 E. D. Smith, 760; 94 Mich. 83; 77 Tex. 69. Taking, then, the allegations in the petition and construing the contract according to the intention of the parties, and giving to the statute a fair construction, we must rule that no error was committed by the trial judge in sustaining the demurrer to the petition. In such a case, the materialman must be remitted to his remedy against the contractor with whom he originally dealt.

*Judgment affirmed.  All the Justices concurring, except*
Fish, J., dissenting. Prior to the repeal of sections 2802 and 2803 of the Civil Code, one who gave out a contract for the construction of a building, and who failed to retain twenty-five per cent. of the contract price thereof until the contractor should submit to him an affidavit that all debts incurred for material in the construction of the building had been paid, or that the persons to whom the debts for material were owed had consented to the payment of such per cent., was liable to the extent of twenty-five per cent. of the contract price to a materialman for material furnished to the contractor in constructing the building, although the contract contained a stipulation to the effect that when the building should have progressed to a certain stage toward completion the owner might suspend further work thereon, and, should he elect so to do, then a stated sum should be the compensation of the contractor for the work done and material furnished up to that time, and notwithstanding the fact that when the work of construction had reached the stage mentioned the contractor abandoned it without the consent of the owner.