No. 8148.  JULY 15, 1931.

YOUNG *et al.,* executors, *v.* HARLEY-MITCHELL HARDWARE COMPANY *et al.*

No. 8216.  JULY 14, 1931.

*Wilcox, Connell & Wilcox,* for plaintiffs.
*Branch & Snow,* for defendants.

BECK, P. J.  J. E. Young and others, executors, brought their petition against Harley-Mitchell Hardware Co. and others, materialmen and laborers, seeking an injunction to restrain the defendants from filing suit or otherwise undertaking to enforce their claims for labor and material furnished in erecting a certain building described in the petition, and to require the defendants to interplead and establish the amount and priority of their claims; for accounting, and for other equitable relief.  At the trial the case by consent of both parties was submitted to the court on an agreed statement of facts, without the intervention of a jury.  Judgment was rendered in favor of the defendants against the plaintiffs for $1,016.29, with interest; and the plaintiffs excepted.

From the agreed statement of facts it appears that the executors

of the will of J. E. Young, hereinafter referred to as the owner, made a contract with R. L. Tillman & Son, hereinafter referred to as the contractor, to remodel and rebuild a building in the City of Quitman, Georgia, to be known as the Ilex Theatre. The contract price of the work was $8,940. The contractor entered into a bond payable to the owner, signed by United States Fidelity & Guaranty Company as surety, in the sum of $8,940, conditioned to hold the owner harmless from any pecuniary loss resulting from the breach of any terms, covenants, and conditions of the contract. The contractor entered upon the performance of the contract and continued to perform work thereunder until about March 18, 1929, when he discontinued work under the contract because of his inability to carry on the work. At that time the owner had advanced to him $8,916.92. Of this amount there had been paid $3,173.41 for labor which constituted liens on the building, $4,727.22 for material which constituted liens on the building; $650.75 had been diverted by the contractor to salaries of a member of the firm and the foreman of the job, who were not entitled to liens for labor; and $992.01 was paid to the contractor and not applied by him to any specific claims for labor and material. Of the amount so paid for material, which constituted liens on the building, the contractor paid from his own funds, or with money advanced to him by the owner on the contract price, $626.47 that went to payment for material which went into the building. When the contractor ceased work under the contract, a meeting was held between the contractor, the owner, the surety, and the architect, at which an adjustment was made and a contract was entered into which provided that the owner should complete the building, the surety should pay to the owner a certain sum, and would defend any suits by lienholders and pay any recovery had by them. At this conference the owner and the surety were given notice by the contractor that certain claims for material which were liens on the building were outstanding and unpaid, including the liens of the defendants in this case. These lien claimants recorded their claims of lien, the first being filed on March 18 and recorded on March 19, 1929, and practically all of them were filed in March prior to the expenditure by the owner of any further moneys on the work. In fact only three of the liens were recorded subsequently to any expenditure by the owner, two of them in April and one in May, and

all of them were recorded before the owner finally completed the expenditures for completing the building.

It is the contention of the lien claimants in this case that the owner is liable to them, if not for the whole amount of their liens, at least for the sum of $1,016.29, with interest; that is, the amount paid by the owner to the contractor prior to March 18, 1929, and not applied by the contractor in payment of claims for labor and material. The final judgment of the court was in accordance with the contentions of the lien claimants. This contention might be sound if the owner of the property had not been compelled, in order to complete the building contemplated by the contract, to make additional expenditures for labor and material. But the owner did proceed to the completion of the building and was compelled to expend for labor and material the additional sum of $1,411.54. The right of the lien claimants to the enforcement of their liens does not depend solely upon the relative status of their liens and the amounts which had been paid by the owner to the contractor on March 18, 1929, but the additional expenditures for labor and material made by the owner must be taken into account. These additional expenditures for labor and material are to be treated as payments made upon the contract price under the original contract; or they are to be deducted from the original contract price, to follow language used in one or more of our decisions. This ruling is made, of course, upon the assumption that the owner had the right to complete the building; and as to this we do not think any question can be raised. In *Hunnicutt & Bellingrath Co.* v. *Van Hoose,* 111 *Ga.* 518 (36 S. E. 669), it was said: "Mr. Boisot, however, further says (§ 85) that in such case the cost of completing the work is to be deducted from the contract price in order to ascertain the amount up to which the subcontractors may claim liens; and if such deductions, together with payments previously made to the contractor, equal or exceed the entire contract price, then of course the subcontractors and materialmen have no lien, since there is nothing due under the contract; citing 4 E. D. Smith, 760; 94 Mich. 83; 77 Tex. 69." This rule laid down by Boisot in his work on Mechanics' Liens was recognized and applied in that case. In *Prince* v. *Neal-Millard Co.,* 124 *Ga.* 884 (53 S. E. 761, 4 Ann. Cas. 615), it was said: "If the contractor abandons his contract, the owner may have it completed and charge the

necessary cost of completion against the contract price, before being liable either to the contractor or to the materialman. Whether or not an owner is bound at all events to complete a job only begun and abandoned by the contractor, so as perhaps to entail upon himself serious loss, merely in order to demonstrate that none of the contract price is available for the purpose of paying materialmen and laborers, is not now in question. But if he does complete the work, the necessary cost of doing so may be deducted from the contract price, and the property will only be subject to the lien of materialmen to the extent of the balance." And it has been ruled that "in a proceeding to foreclose a materialman's lien it is incumbent upon the plaintiff to show that the amount for which he asserts a 'lien comes, in whole or in part, within the contract price agreed on between the contractor and the owner of the property improved." *Stevens* v. *Georgia Land Co.*, 122 *Ga.* 317 (50 S. E. 100).

Applying the rules stated above to the facts in this case, the extra amount paid by the owner of the property improved for labor and material furnished necessary to complete the building should have been deducted from the contract price as contained in the contract between the owner and contractor. And a calculation based upon the facts in the record will show that the court did not do this in rendering the judgment for $1,016.29 in favor of the defendants. Had the proper deduction from the contract price, according to what we have said above, been made, a much smaller sum would have been allowed to the defendants under the judgment of the court.                  *Judgment reversed. All the Justices concur.*