65454. MARATHON OIL COMPANY v. HOLLIS et al.

SHULMAN, Chief Judge.

This complex action was initiated by appellee Hollis & Hollis Construction Company ("Hollis") and its principals against appellee Waldron's Petroleum Tank Services, Inc. ("Waldron's"), Gary Waldron, and appellant Marathon Oil Company ("Marathon") to recover money allegedly due Hollis pursuant to a subcontract with Waldron's for concrete work on a construction project at the Marathon terminal in Macon. Hollis sought to recover the money allegedly due from both Waldron's and Marathon and also sought a judgment lien on Marathon's property. Marathon answered and cross-claimed against Waldron's, seeking to recover damages allegedly resulting from Waldron's breach of its construction contract for the mechanical work on the project at the Macon terminal. Waldron's in turn answered and cross-claimed against Marathon, seeking to recover damages allegedly accruing from Marathon's wrongful termination of Waldron's and Marathon's failure to pay sums claimed due pursuant to the construction contract. The case proceeded to trial before the judge sitting without a jury. After hearing several days of testimony and numerous exhibits, most of which concerned the defendants' cross-claims, the trial court entered judgment in favor of Hollis in the amount of $37,639.24 and granted Hollis a lien on Marathon's property in the amount of $33,285.90. The court also found that the termination of Waldron's by Marathon "was unauthorized under all the facts and circumstances of this case," and awarded Waldron's $69,556.87. The trial court also made several other findings not relevant on appeal. From the judgments in favor of Hollis and Waldron's against it, Marathon has appealed and enumerated five grounds of alleged error. These enumerations will be addressed in logical rather than numerical sequence.

1. In its second enumeration of error, Marathon contends that the trial court erred in finding that the termination of Waldron's was unauthorized when the evidence demanded a contrary finding. Thus, Marathon contends, the trial court should not have entered judgment in favor of Waldron's, but should have permitted Marathon to recover its reasonable costs for completion of the contract work.

Despite Marathon's persuasive argument to the contrary, we

cannot conclude that the trial court's finding with respect to the termination was without evidence to support it. The written contract contained numerous specifications relating to the quality of work as well as a schedule for completion of the project. The original schedule called for a completion date of November 19, 1979. All parties agree that the project was not near completion on that date. However, the schedule was completely revised on several separate occasions, and Waldron's was working pursuant to the latest revised schedule at the time of the termination. There was considerable testimony about faulty workmanship and lack of supervision, as well as delays in completing the work according to the original schedule and the reasons therefor. A review of the transcript reveals that counsel for all parties appear to have thoroughly adduced the facts relevant to their respective claims.

A. We agree with Marathon in its contention that Waldron's was under a duty to perform the work under the contract according to specifications and "skillfully, carefully, diligently, and in a workmanlike manner." *Sam Finley, Inc. v. Barnes,* 156 Ga. App. 802, 803 (275 SE2d 380). However, despite considerable evidence to the contrary, the trial court had before it evidence sufficient to authorize the conclusion that Waldron's did perform the majority of the work properly pursuant to the contract and that it stood ready to correct any defects.

B. We also agree with Marathon's contention that it had a right to performance of the work pursuant to the contract schedule. However, "[t]he terms of a written contract may be modified or changed by a subsequent parol agreement between the parties, where such agreement is founded on a sufficient consideration." *Ryder Truck Lines v. Scott,* 129 Ga. App. 871 (3) (201 SE2d 672). "Even if the contract provides it may not be changed except by writing, parties may subsequently by mutual consent enter into a new agreement at variance with the other. [Cit.]" *Wood v. Yancey Bros. Co.,* 135 Ga. App. 720, 721 (218 SE2d 698). The modified agreement "need not be expressed in words, in writing or signed, but the parties must manifest their intent to modify the original contract." *Ryder Truck Lines,* supra, Division 4. "[W]hether there has been such a mutual and intended departure so as to make practically a new agreement is generally a question for [the fact finder] to determine." *Continental Cas. Co. v. Union Camp Corp.,* 230 Ga. 8, 11 (195 SE2d 417). There was ample evidence presented at trial from which the court could have concluded that due to unanticipated construction and design problems, unanticipated interruption of Waldron's work at the terminal, or problems involving another contractor, all of which may have been attributable to Marathon, Waldron's was unable to

complete its work according to the original schedule, and the parties entered into several revised agreements with revised scheduling and completion dates.

C. Marathon argues that Waldron's should not be permitted a recovery, irrespective of any contract modifications, because Waldron's failed to perform its original contract obligations. "[A]n offer or an agreement to extend the time conditioned upon the defendant performing is not binding on the plaintiff where the defendant in fact fails to perform. Each alleged agreement for extension of time . . . is conditioned upon the defendant (a) meeting the new deadline, and (b) satisfactorily completing the original contract." *Berston v. Futo,* 97 Ga. App. 5, 9 (102 SE2d 87). We agree with Marathon's contention that any extension of time in this case anticipated performance of Waldron's contract obligations. Again, however, there was evidence from which the trial judge could have concluded that Waldron's was performing its contract obligations according to the latest schedule at the time of termination and would have completed the contract pursuant to the new schedule. Consequently, the evidence supports the trial court's finding that the termination was improper, thus entitling Waldron's to recover from Marathon any damages sustained (*Stowers v. Hall,* 159 Ga. App. 501 (2) (283 SE2d 714)), and preventing recovery by Marathon (*Allied Enterprises v. Brooks,* 93 Ga. App. 832, 834 (93 SE2d 392)).

D. Recovery by Waldron's would not be prevented by its failure to request any extension of the completion date in writing, as required by the contract. As with the completion date itself, there was ample evidence from which the trial court could have concluded that this contractual requirement was waived or modified by mutual agreement. *Commercial Trust Co. v. Mathis,* 100 Ga. App. 620, 622 (112 SE2d 291).

E. "The Court of Appeals is a court for the correction of errors of law only, and has no jurisdiction to hear evidence aliunde the record, or to decide disputed issues of fact." *Jones v. Smith,* 83 Ga. App. 798, 800 (65 SE2d 188). "Where a case is submitted to the judge for trial and decision, without a jury, his finding is given the same weight as a verdict, and if there is any evidence to support it, this court will not disturb the finding 'unless clearly erroneous.' [OCGA § 9-11-52 (a)] Code Ann. § 81A-152 (a); [Cits.]" *Evans v. Marbutt,* 140 Ga. App. 329, 332 (231 SE2d 94). Our careful review of the evidence adduced at trial leads us to the inescapable conclusion that the trial court's determination that Marathon improperly terminated Waldron's is supported by the evidence and is not clearly erroneous. Accordingly, appellant's second enumeration of error is without merit.

2. Appellant's first enumeration attacks the amount of the

award in favor of Waldron's. The trial court awarded $69,556.87 to Waldron's on its cross-claim, "that being the amount due under the terms of the contract between the parties, for those items of work in place by December 24, 1979, which had been or were subsequently approved by [Marathon]." Unless erroneous as a matter of law and if supported by the evidence, this finding must be upheld on appeal. See Division 1D above. We agree, however, that the trial court applied an erroneous standard in deriving Waldron's damages in this case.

"[W]here the contract is wrongfully breached by the owner the contractor is entitled to recover damages measured by his actual expenditure to the date of breach, less the value of the materials he has left on hand, plus the profit he would have realized in the event of complete performance, but in no event to exceed the contract price. If progress payments have been made by the owner, he is entitled to credit therefor . . . If it appears that full performance would have resulted in a net loss, the amount of the loss must be deducted from [the contractor's] recovery." *Crankshaw v. Stanley Homes,* 131 Ga. App. 840, 842 (207 SE2d 241). Accord, *Stowers v. Hall,* supra; *Williams v. Kerns,* 153 Ga. App. 259 (265 SE2d 605).

The trial court clearly used an inappropriate standard in reaching the amount of damages due Waldron's. Instead of figuring Waldron's actual expenditure to the date of the breach, less progress payments, the value of any remaining materials, and the projected loss to Waldron's to complete the contract according to specifications (*Crankshaw,* supra), the trial court merely awarded an amount equal to the value of "those items of work in place by" termination and accepted by Marathon. "[J]udgments based on erroneous theories of law are generally reversed in the appellate courts. [Cits.]" *Meyers v. Glover,* 152 Ga. App. 679, 683 (263 SE2d 539). Thus, it is irrelevant whether the judgment in favor of Waldron's fell within the range of evidence presented, "because we cannot say what the trial judge would have concluded if he had been relying on the correct theory." Id.

3. In its third enumeration of error, appellant contends that the trial court erred in awarding Waldron's prejudgment interest. We agree that Waldron's was not entitled to prejudgment interest.

Prejudgment interest is allowable only where the amount recovered is liquidated, i.e., certain and fixed, "a sum which cannot be changed by the proof." *Nisbet v. Lawson,* 1 Ga. 275, 287; OCGA § 7-4-15 (Code Ann. § 57-110). "A debt is liquidated when it is certain how much is due and when it is due. An unliquidated claim is one which one of the parties to the contract or transaction can not alone render certain. [Cit.]" *Lincoln Lumber Co. v. Keeter,* 167 Ga. 231, 236

(145 SE 68). A demand is not liquidated where its amount "could only be established by a jury." *Ga. Ports Auth. v. Mitsubishi Intl. Corp.,* 156 Ga. App. 304, 306 (274 SE2d 699). In the present case, the amount of damages due Waldron's, if any, cannot be established until the trial court first projects, from all the evidence, the amount of loss Waldron's would have sustained if it had completed the contract. This factor alone makes any damage award to Waldron's unliquidated. Consequently, the trial court's award of prejudgment interest was error.

4. In its fourth enumeration, Marathon contends that the trial court erred in granting Hollis a lien on Marathon's property. This argument is based upon the rule that "where a contractor abandons his contract the cost in completing the work is to be deducted from the contract price in order to ascertain the amount up to which mechanics and materialmen may claim liens. If such deductions, together with payments previously made to the contractor, equal or exceed the entire contract price, then of course the mechanics and materialmen have no lien, since there is nothing due under the contract. *Hunnicutt & Bellingrath Co. v. Van Hoose,* 111 Ga. 518 (2), 527 (36 SE 699); *Rowell v. Harris,* 121 Ga. 239, 240 (48 SE 948); *Prince v. Neal-Millard Co.,* 124 Ga. 884 (53 SE 761); *Young v. Harley-Mitchell Hardware Co.,* 173 Ga. 35 (159 SE 567); *E. Smith Heating & Air Conditioning, Inc. v. Biggers,* 139 Ga. App. 216, 217 (1) (228 SE2d 203)." *Thompson v. Brannen Bldg. Supply,* 153 Ga. App. 4, 6 (264 SE2d 498). See modification of rule in *Jones Mercantile Co. v. Lyn-Har, Inc.,* 245 Ga. 812 (267 SE2d 251). See also *Adams v. Stephens Lumber Co.,* 158 Ga. App. 761, 762 (282 SE2d 217); *Pugh v. Wood,* 156 Ga. App. 91, 92 (274 SE2d 106); *Roberts v. Ga. Southern Supply Co.,* 92 Ga. App. 303, 306 (88 SE2d 554).

However, all of the above cases involved situations in which the contractor had abandoned the contract after part performance. None involved improper termination of the contractor by the owner, as the trial court found in this case, nor have we located or been directed by counsel to any such case. We are of the opinion that the foregoing rule should not apply where the cost of completion has exceeded the original contract price after the owner has improperly terminated the original contractor. As can be seen from a reading of *Hunnicutt &c. Co. v. Van Hoose,* supra, the rule protects an innocent owner from potential lienholders when a contractor abandons an unprofitable contract and leaves the owner with no choice but to exceed the contract price in order to complete the construction. The latter situation must be distinguished from the one in which the owner loses the benefit of his contract with the original contractor through his own wrongful termination of that contract and later incurs additional

costs for completion. The position of the owner, vis-a-vis materialmen and mechanics, wrongfully terminating the contract should not be improved by virtue of the termination. Consequently, the mere fact that the cost of completion plus prior progress payments exceeded the original contract price does not destroy Hollis' lien. This enumeration is without merit.

5. The fifth and final enumeration of error challenges the trial court's refusal to admit into evidence the deposition of Gary Waldron. Relying on *Head v. Russell Constr. Co.,* 152 Ga. App. 864 (264 SE2d 313), and OCGA § 9-11-32 (a)(2) (Code Ann. § 81A-132), appellant argues that the deposition was admissible for any purpose and should not have been excluded. We agree. However, we do not agree that the trial court's decision in this regard requires reversal. Gary Waldron spent considerable time on the witness stand and was cross-examined extensively and thoroughly by appellant's counsel. This cross-examination included the use of Mr. Waldron's deposition for impeachment purposes. Under these circumstances, the court's refusal to admit the deposition constituted at most harmless error. See *Thomas v. Statewide Beverage Equip.,* 152 Ga. App. 293, 295 (262 SE2d 575).

6. For the reasons stated in Division 2 of this opinion, the case is remanded to the trial court for recomputation of Waldron's damages. The trial court is also directed to delete any award to Waldron's for prejudgment interest.

*Judgment affirmed in part and reversed in part, and remanded with direction. McMurray, P. J., and Birdsong, J., concur.*

DECIDED JUNE 21, 1983.

*H. Jerome Strickland, Frank L. Butler III,* for appellant.
*Walter H. Bush, Jr., William R. Leonard, Mallory C. Atkinson, Jr.,* for appellees.