A91A1730. SUMMIT-TOP DEVELOPMENT, INC. et al. v.
WILLIAMSON CONSTRUCTION, INC.
(416 SE2d 889)

COOPER, Judge.

Appellants, developers of a housing subdivision, retained appellee for grading, clearing and sewer installation on the project in March of 1988. Appellee billed appellant Summit-Top Development, Inc. ("Summit-Top") monthly for work performed and was paid accordingly until appellee submitted an invoice on September 8, 1988 for $342,303.90 for the blasting and removal of mass rock. Appellant James Ross ("Ross"), a principal in Summit-Top and the corporation's engineer, expressed doubt that appellee's actual blasting work justified the amount billed. The parties met in an effort to come to an understanding regarding the invoice; however, their efforts were un-

successful. On September 24, 1988, another invoice was submitted by appellee in the amount of $52,156.80, which represented the drilling and blasting of rock by appellee's subcontractor. Appellants again disputed the bill, refused payment, and the parties were unsuccessful in reaching an understanding. Appellee then ceased work on the project and filed a claim of lien against the corporate property for $394,460.70, the sum of the unpaid bills. Thereafter, appellee brought an action to recover the outstanding payments from appellants; however, realizing that the lien included charges for work which appellee had not performed, appellee filed a release of lien removing $47,421.62 from the lien, which was consented to by appellants. The case proceeded to trial before a jury. The trial court denied appellants' motion for directed verdict argued at the close of the evidence, and the jury returned a verdict for appellee awarding $347,039.08 in actual damages, a special lien, attorney fees and prejudgment interest. This appeal followed.

1. Appellants enumerate as error the trial court's denial of their motion for directed verdict on the ground that the claim of lien included charges for work appellee had not performed and therefore was not in strict compliance with Georgia lien statutes. Appellants contend that appellee deliberately included erroneous charges in the lien and could not establish at trial how the amount discharged from the lien was determined; therefore, appellants argue that appellee cannot rely on an exception to the lien statutes which allows easily separable nonlienable items to be omitted from a lien and still preserve the lien. *Sears Roebuck & Co. v. Superior Rigging &c. Co.*, 120 Ga. App. 412 (4) (170 SE2d 721) (1969). Appellants apparently are not contesting the sufficiency of the evidence supporting the jury's award of the amount of the lien as amended but dispute only the initial inclusion and computation of the erroneous charges.

The evidence adduced at trial reveals that equipment and materials necessary to complete the work included in the invoice were present on the jobsite; that appellee was ready to proceed with the work when it learned that it would not be paid for work already performed; that appellant, Kermit Sayre ("Sayre"), another principal in Summit-Top who served as the project manager, instructed appellee in how to prepare invoices to maximize its draw from the account established to fund construction; and that the September 8, 1988, invoice was prepared according to those instructions. The invoice was accompanied by 34 pages of documentation illustrating the basis for the charges, and it appears that appellee's president, who prepared the invoices, the original claim of lien and the release of property, culled the documents prior to trial and easily computed the amount representing work not performed which was deducted from the lien, with appellants' consent. It is worthy of note that appellants demonstrated the

ease with which the nonlienable charges could be separated from the lienable charges in their own brief to this court. " 'The standard of review of the trial court's denial of a motion for directed verdict in a civil case is the "any evidence" standard. [Cit.]' [Cit.]" *CSX Transp. v. Barnett*, 199 Ga. App. 611 (2) (405 SE2d 506) (1991). In our view, there was sufficient evidence supporting appellee's exclusion of the nonlienable charges from the original claim of lien. See *Taverrite v. Lowe's of Franklin*, 166 Ga. App. 346 (1) (304 SE2d 78) (1983). Moreover, we find that the initial inclusion of the charges in the September 8, 1988, invoice was the result of appellants' own instructions and that any difficulty experienced by appellants in securing a bond for discharge of the lien was ultimately relieved by appellee's reduction of the amount of the lien and the corresponding release of the property, which occurred well in advance of the trial of the case.

2. Appellants also contend the trial court erred in not directing a verdict in their favor because appellee abandoned the project fearing non-payment and did not demonstrate substantial compliance with the contract in order to enforce its lien pursuant to OCGA § 44-14-361.1 (a) (1). Appellants argue that the record demonstrates that they did not flatly refuse to pay the invoices but attempted to reach a compromise with appellee; that they had paid all previous invoices; that funds were available for the completion of the project; that studies of the area did not indicate that the area contained as much mass rock as urged by appellee; and therefore that appellants were justified in not paying the full amount requested by appellee.

"One seeking to foreclose a contractor's lien for labor and materials must show a substantial compliance with the contract. [Cits.] If the completion of the contract was prevented by the defendant, this is equivalent to a completion of the contract as a remedial element. [Cit.] . . . An abandonment of the work before compliance with the contract, upon a mere apprehension that he will not be paid at the time for payment, is unauthorized and defeats the contractor's claim of lien. [Cit.]" *MacLeod v. Belvedale, Inc.*, 115 Ga. App. 444 (1) (154 SE2d 756) (1967). Appellants' recitation of the evidence adduced at trial omits two incidents which shed more light on the circumstances under which appellee left the job. The record reveals that at the meeting following the submission of the September 8, 1988 invoice, Ross and Kell Williamson, Sr. ("Williamson"), appellee's president, had a heated exchange in which Ross accused appellee of blasting dirt instead of rock and told Williamson: "Leave. Get all your damn equipment and leave." Appellee then removed the majority of its equipment and employees off the jobsite. Williamson testified that he understood that Ross was firing appellee. In a subsequent meeting, despite the testimony of a Trust Company Bank official who indicated that the bank loaned Summit-Top $2.3 million for the acquisi-

tion and development of the subdivision and that $1.1 million was designated for development, Williamson testified that Ross showed him a draw sheet for an acquisition and development loan and said that Summit-Top had no money to pay appellee. Williamson said that after personally looking at the draw sheet he concluded Summit-Top had no money. The foregoing evidence supports a finding that appellee was prevented from completing the job by appellants' actions; therefore, appellee's cessation of work was not an abandonment of the contract. See *Marathon Oil Co. v. Hollis*, 167 Ga. App. 48 (4) (305 SE2d 864) (1983). Accordingly, the trial court did not err in denying appellants' motion for directed verdict. *CSX Transp.*, supra.

3. Appellants also contend that the verdict against appellants Ross and Sayre, personally, was contrary to the weight of the evidence. Appellants argue that the evidence failed to establish that the individual defendants abused the corporate form. Appellee contends the evidence demonstrated that Ross was the driving force behind the refusal to pay appellee; that appellants waited until appellee performed the bulk of the work necessary to complete the subdivision and then refused to pay; that Ross then lied to appellee about the amount of money available to pay appellee to avoid payment of a legitimate claim; that Sayre and Ross had created other corporations to develop properties which also owe large sums to various subcontractors; and that such course of conduct shows an abuse of the corporate form and the use of corporations to defeat justice, perpetrate fraud and to constantly evade statutory and contractual responsibility.

" 'While upon equitable principles the legal entity of a corporation may be disregarded,' (cit.), great caution should be exercised by the court in doing so. [Cit.] . . . [I]n order to disregard the corporate entity because a corporation is a mere alter ego or business conduit of a person, it should have been used as a subterfuge so that to observe it would work an injustice. To prevail based upon this theory it is necessary to show that the shareholders disregarded the corporate entity and 'made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist.' [Cit.] ' "The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party 'has over extended his privilege in the use of a corporate entity in order to defeat justice, perpet[r]ate fraud or to evade contractual or tort responsibility.' " ' [Cit.]" (Indention omitted.) *Amason v. Whitehead*, 186 Ga. App. 320, 321-322 (367 SE2d 107) (1988). The evidence demonstrates that Sayre, and to a limited degree, Ross, were principals in several similar projects which previously failed and left in their wake numerous unpaid contractors and subcontractors whose recourse appears to be enforcement of materialman's liens against insolvent corporations.

Sayre's testimony demonstrates his awareness of the protection against personal liability afforded by incorporation, that he and Ross are involved in a pattern of practice wherein the corporate entity is a mere instrumentality to evade contractual responsibility and that appellee is now a victim of that course of conduct. It is our conclusion, therefore, that the verdict against Sayre and Ross personally was not against the weight of the evidence.

In addition, the jury was charged as follows: "Summit-Top is being sued as a corporation, and also James S. Ross and Kermit D. Sayre, individually. I charge you that it is proper to disregard the corporate entity and pierce the corporate veil when it is established that the stockholders disregarded the corporate entity, made the corporation a mere instrumentality for the transaction for the stockholder's own affairs; that there is such unity of interest in ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud."

Appellants offered no objection to the giving of this charge which gave rise to the verdict against Sayre and Ross. OCGA § 5-5-24 (a). Appellants also cannot be heard to complain that the verdict form was defective, as no objection was raised below. *Americani v. Sidky*, 199 Ga. App. 823 (1) (406 SE2d 259) (1991).

*Judgment affirmed. Birdsong, P. J., and Pope, J., concur.*

DECIDED MARCH 19, 1992.

*Moore & Rogers, John H. Moore, Sara J. Murphree*, for appellants.

*Dupree, Johnson & Poole, Hylton B. Dupree, Jr.*, for appellee.