A97A1746. McDANIEL v. HENSONS', INC.
(493 SE2d 529)

Judge Harold R. Banke.

Hensons', Inc. ("Hensons") sued Donald L. Deibert d/b/a Magna Timber & Pulp, and M. T. McDaniel, Jr. to recover for work Hensons performed on real property owned by McDaniel, which had been done at the direction of Deibert. Enumerating seven errors, McDaniel appeals the jury verdict.

Viewed on appeal in a light most favorable to the jury's verdict, the evidence was as follows. Part of the property which McDaniel owned had been used by a previous tenant as a landfill and was blighted by a massive amount of discarded material consisting pri-

marily of wood, stumps, logs, and dirt that rendered the property undevelopable. Deibert described it as a "million dollar property worth nothing." Because McDaniel wanted to commercially develop the land, he entered into an arrangement with Deibert. McDaniel agreed to provide $50,000 in "seed money" to Deibert to get a cleanup project started. It was expected that the project would then become self-sustaining from the sale of wood chips, mulch, or other products. McDaniel agreed that Deibert would receive all profit after reimbursing McDaniel's $50,000 initial investment. According to M. T. McDaniel III, who was heavily involved in his father's business, it was estimated that the cleanup effort could cost up to $300,000.

Deibert negotiated with Hensons, who entered into a contract with Deibert's company, Magna Timber & Pulp, whereby Hensons would be compensated on an hourly basis for its equipment and personnel. Using an excavator, grinder, and front-end loader, Hensons cleared part of McDaniel's property. Hensons received payment from Deibert at the end of each of the first two weeks of work. As a condition for payment, Hensons was required to complete lien releases on which Deibert was denoted as the "owners agent." During the third week, M. T. McDaniel III informed Deibert, but not Hensons, that "we'd reached the $50,000 limit" and did not intend to further fund any operations. McDaniel's son admitted that he knew that Hensons was continuing to work but claimed that it was his understanding that Deibert would be responsible for Hensons' payment. When Deibert failed to pay Hensons at the end of the third week, he assured Hensons that payment would be forthcoming. At the conclusion of the fourth week, not having been paid, Hensons ceased all work having completed 35 to 40 percent of the project. The decision to halt work was a mutual one between Deibert and Hensons.

Hensons then filed the underlying action against McDaniel and Deibert d/b/a Magna Timber & Pulp. Hensons also filed a materialman's lien against McDaniel's real property for furnishing material and labor used in the clearing and improvement of the property. Throughout the trial, the nature of the relationship between Deibert and McDaniel was hotly disputed, especially because there was no written contract between them. McDaniel contended that Deibert was an independent contractor with no authority to enter into contracts on his behalf. Deibert denied being a contractor, and on a number of documents, Deibert identified himself as McDaniel's agent. The jury determined that Hensons was entitled to foreclose on its claim of lien and that Deibert did not owe any money to Hensons. Hensons obtained a judgment of $45,219.36 solely against McDaniel. *Held*:

1. The trial court did not err in denying McDaniel's motion for judgment notwithstanding the verdict and motion for new trial. A

j.n.o.v. is improper unless there is no conflict in the evidence and the evidence demands a particular verdict. *First Union Nat. Bank &c. v. Cook*, 223 Ga. App. 374, 376 (4) (477 SE2d 649) (1996). Although McDaniel contends that Hensons' theory of apparent agency was not supported by the evidence, the record shows otherwise. In fact, the lien waiver which Hensons was required to sign listed Deibert as the "owners agent." Hensons' vice president testified that the "affidavit of release of liens . . . told me that Mr. Deibert was acting as an owner's agent rather than acting as a contractor himself, and that I was the contractor." Compare *Turnipseed v. Jaje*, 267 Ga. 320, 323 (2) (a) (477 SE2d 101) (1996). The testimony further showed that McDaniel allowed Deibert to supervise work on his property, permitted the erection of a construction trailer, required lien waivers, had Deibert secure a building permit, and made payments to Deibert of invoices submitted by Deibert for work done under Deibert's supervision.

Even assuming arguendo that Deibert contracted for Hensons' work without authority, McDaniel was liable for the expense because he subsequently ratified the unauthorized act when he required and obtained Hensons' lien releases after paying Deibert who paid Hensons. See OCGA §§ 10-6-1; 10-6-51. Ratification may occur by the principal's partial payment on an allegedly unauthorized agreement. *Pioneer Concrete Pumping Svc. v. T & B Scottdale Contractors*, 218 Ga. App. 596, 597 (2) (462 SE2d 627) (1995). When an agent acts in excess of his authority, "the principal may not ratify in part and repudiate in part; he shall adopt either the whole or none." OCGA § 10-6-51.

Although Hensons admitted it did not know the identity of the property owner, a principal, like McDaniel here, can be bound by his agent's acts, even when the principal remains undisclosed. *Campbell v. Alford*, 155 Ga. App. 689 (1) (272 SE2d 553) (1980). Whether Deibert acted with actual or apparent authority on McDaniel's behalf was for the jury to resolve. See *Thomas Register &c. v. Proto Systems Electronic Packaging*, 221 Ga. App. 779, 780 (471 SE2d 235) (1996).

Moreover, a contract between a materialman and the property owner is not necessarily required. *Central of Ga. R. Co. v. Shiver*, 125 Ga. 218, 221 (53 SE 610) (1906); *Siplast, Inc. v. Inland Container Corp.*, 172 Ga. App. 341, 344 (323 SE2d 187) (1984) (physical precedent only). "A materialman's lien effectively permits the transfer of liability from the person who actually contracted with the materialman for materials to be used in improving real estate to the owner of the improved property, even though that property owner usually will have no relationship with the materialman, contractual or otherwise." *Palmer v. Duncan Wholesale*, 262 Ga. 28, 29-30 (1) (413 SE2d 437) (1992).

Applying the rule set forth in *Palmer*, supra, to this case, after

Hensons' work improved McDaniel's real estate, the jury could find that McDaniel, as the property owner, became the responsible party.[1] See id. The undisputed evidence shows that Hensons was not paid for all of its work despite supplying equipment and personnel which improved McDaniel's property. The jury award was for the total of unpaid invoices for the third and fourth week of work plus interest. Under these facts, since there was evidence to support the jury's verdict, it must be affirmed.[2] See *Citizens Bank of Ball Ground v. Johnson*, 191 Ga. App. 155, 158 (2) (381 SE2d 121) (1989).

2. The trial court's instructions on agency, apparent authority, and an agent's authority were correct statements of law and adjusted to the evidence in the case. See *McKinnon v. Streetman*, 192 Ga. App. 647, 648 (1) (385 SE2d 691) (1989). The record contradicts McDaniel's assertion that Hensons agreed to remove any claim as to the existence of an actual agency relationship between Deibert and McDaniel.

3. The trial court properly declined to charge on Hensons' alleged duty to mitigate its damages because that instruction was not supported by the evidence. As soon as Hensons learned that it would not be paid, it ceased all work and took no action to its own detriment. See *J. C. Penney Cas. Ins. Co. v. Woodard*, 190 Ga. App. 727, 729 (1) (380 SE2d 282) (1989).

4. The trial court did not err in charging the jury that a lien could be enforced against McDaniel's real property. Despite McDaniel's contrary contention, Hensons' work in removing the debris enhanced the value of his real property and could properly be the basis for a lien under OCGA § 44-14-361 et seq. See *Thompson v. Crouch Contracting Co.*, 164 Ga. App. 532 (297 SE2d 524) (1982) (materialman's lien properly brought for grading certain real property). Compare *Skandia Draperies Mfg. Co. v. Augusta Innkeepers, Ltd.*, 157 Ga. App. 279, 280 (1) (277 SE2d 282) (1981) (supplying draperies not an improvement to real property coming within ambit of lien statute).

McDaniel's claim that he discharged his obligations by paying the "full" contract price to Deibert is without merit. An owner must prove that all amounts paid to the contractor were appropriately paid to materialmen and laborers or that the contractor's statutory affidavit was obtained. *D & N Elec. v. Underground Festival*, 202 Ga. App. 435, 438 (3) (414 SE2d 891) (1991). It is undisputed that Hensons

---

[1] The parties agreed to stipulate that McDaniel had a life estate and owned the property.

[2] Because McDaniel failed to raise below the issue that Hensons failed to sue the proper party, we will not consider that issue on appeal. *Dupree v. State*, 206 Ga. App. 4 (424 SE2d 316) (1992).

was never paid and that no lien waivers were obtained from Hensons for the last two weeks of work. Notwithstanding McDaniel's argument to the contrary, Hensons' lien claim was not foreclosed by an abandonment of the contract. *Summit-Top Dev. v. Williamson Constr.*, 203 Ga. App. 460, 463 (2) (416 SE2d 889) (1992). Hensons' cessation of work was premised on confirmation that it would not be paid for its efforts, not a "mere apprehension" of non-payment. See id.

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED OCTOBER 1, 1997 —
RECONSIDERATION DENIED NOVEMBER 6, 1997 —

*Glenville Haldi*, for appellant.
*Alston & Bird, William H. Hughes, Jr., Kenneth D. Steele*, for appellee.