A99A0392. SAVANNAH AIRPORT COMMISSION et al.
v. HIGGERSON-BUCHANAN, INC.
(519 SE2d 475)

ANDREWS, Judge.

This case makes its second appearance here, having been previously before us after the trial court's grant of summary judgment to Savannah Airport Commission, the Mayor, and the Alderman of the City of Savannah (referred to collectively as the Commission) in this construction contract dispute. *Higgerson-Buchanan, Inc. v. Savannah Airport Comm.* (Case No. A96A0007, issued April 16, 1996 and not officially reported).

That opinion set out the basic facts which will be supplemented here as necessary. As set out therein, the issue was whether Caffrey Construction Company (Caffrey), the grading subcontractor for Higgerson-Buchanan, Inc., the prime contractor on the airport project (contractor), was entitled to fully complete the clearing and grubbing work required by the contract and had been improperly prevented from doing so by the Commission or its representatives.

This Court concluded in that opinion that summary judgment was improperly awarded to the Commission and found that the contract between the contractor and the Commission

reveals clearly and without ambiguity that the area to be cleared or cleared and grubbed was initially depicted in the "limits" contained in the project "plans," although payment

was to be made upon the unit price per acre. Compare *DeKalb County v. Beacon Industries*, 187 Ga. App. 370 (370 SE2d 191) [(1988)]. Any subsequent modification of the area designated in the plans to be cleared or cleared and grubbed would be a form of alteration of work and quantities within the meaning of § 40-02 of the construction contract. Pursuant to § 40-02, [the Commission] "reserves and shall have the right to make such alterations in the work as may be necessary or desirable to complete the work *originally intended* in an acceptable manner." (Emphasis supplied.) The "work originally intended," within the meaning of § 40-02 refers to that of *project* completion, as the project was defined within the provisions of the contract and any documents incorporated by reference therein. And, as expressly provided in § 40-01, "the intent of the contract is to provide for construction and *completion*, in every detail, of the work described." (Emphasis supplied.) Thus, it appears that [the Commission was] authorized by the terms of the contract to alter the quantity of clearing or clearing and grubbing to be done, *provided such alteration was either necessary or desirable to complete the airport project in an acceptable manner*. However, this authorization would not include the authority to alter the scope of the work merely to secure an economic advantage to the detriment of the prime contractor and his sub-contractors who had entered their contracts in good faith reliance upon the scope of the project as defined within the four corners of the project construction contract.

(Emphasis supplied.) *Higgerson-Buchanan, Inc.*, supra, pp. 4-5.

On the state of the record at that time, this Court concluded that there remained issues of fact as to whether the Commission acted in bad faith in deleting 52.1 acres from the clearing and grubbing area included within the limits of the area specified in the project plans, and whether a change order, as provided by the contract, had been issued regarding this deletion.

1. The Commission contends that the trial court erred in granting summary judgment to the contractor after extensive additional discovery was engaged in and both parties had moved for summary judgment.

In reviewing grant or denial of summary judgment, this Court conducts a de novo review of the evidence. *Goring v. Martinez*, 224 Ga. App. 137, 138 (2) (479 SE2d 432) (1996); *Gaskins v. Hand*, 219 Ga. App. 823 (466 SE2d 688) (1996). Viewed under the standard of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), and with our prior opinion as the law of the case, *Ford v. Uniroyal Goodrich*

*Tire Co.*, 270 Ga. 730, 731 (514 SE2d 201) (1999); *Dicks v. Zurich American Ins. Co.*, 231 Ga. App. 448 (499 SE2d 169) (1998), the evidence is that the contract unambiguously provided that the contractor[1] was to clear or clear and grub within the limits shown on the project plans, including removal of brush and grass. While Greiner, the Commission's engineer, had estimated that area to include 513 acres by using aerial photographs, no one from Greiner or the Commission had actually walked and measured the property shown within the clearing and grubbing limits. While the contract provided that the 513 acres was an estimate not binding on the Commission, this did not change the fact that the contractor was to complete clearing and grubbing of the acreage contained in the limits, absent an appropriate change order.

When Caffrey actually measured this area, it included 580 acres. Neither Clyde Martin, the Commission's project manager for the airport project, nor Patrick Graham, the Executive Director of the Airport Commission, could dispute that the area actually contained 580 acres instead of the 513 estimated by Greiner. Both Martin and Graham concurred that nothing was deleted from the scope of the work to be completed and that the entire area included within the limits of the clearing and grubbing area was in fact being used by the airport and that some preparation work on it had been done by others during construction.

The bid documents required that a single unit price be bid for all types of clearing and grubbing, although the area actually included 75 acres of swampy land, 165 acres of heavily wooded land, 235 acres of lightly wooded land, and 105 acres of grasslands. The actual price to do each type of grubbing varied with the degree of difficulty and ranged from $2,250 per acre for the swampy areas to $100 for the grassland acres. At the time when Caffrey was ordered to stop work, all of the more difficult areas, where most of the costs of doing the entire project accrued, had been cleared and grubbed and Caffrey was beginning work on the grasslands areas. Since the bid was averaged to a single unit price, doing this work would have allowed Caffrey to reap the profit for the entire job. Caffrey was not allowed to do 52.1 acres, which would have been charged at the unit price of $1,635 per acre.[2] The contractor was paid only for the 460.9 acres which it actually was permitted to clear or clear and grub.

---

[1] Higgerson-Buchanan, Inc. has a pass-through agreement with Caffrey Construction which requires that, upon recovery, Higgerson-Buchanan, Inc. will pay Caffrey the amount recovered for clearing and grubbing, minus five percent.

[2] The unit price consisted of Caffrey's bid price of $1,050 per acre plus the contractor's mobilization costs for the entire project. Inclusion of mobilization costs in the first contract item to be paid out is standard in the construction industry when there is not a separate bid item for mobilization, as occurred here.

Although the Commission argues valiantly that the 52.1 acres were not intended by the engineer and the Commission to be cleared and grubbed, that issue was resolved adversely to them by our prior decision in this case.

Approximately one year after Caffrey actually completed work on the 460.9 acres, the Commission issued Change Order 11 which deleted 52.1 acres from the 513 estimated acres. It was signed by Gaddy, the contractor's project administrator, under protest based on the contractor's previously submitted Request for Equitable Adjustment which sought an adjustment in the unit price based on the Commission's refusal to allow Caffrey to work the 52.1 acres of grasslands.

The Commission contended below and the trial court agreed that the 52.1 acres, which is the difference in the 513 acres estimated and the 460.9 acres actually cleared and grubbed and paid for, was actually a "final determination of the quantities." As concluded by the trial court, even though the document was titled "change order," it was not a change order as contemplated by the contract documents. Instead, it was the Commission's final adjustment of the quantities which the Commission's engineer allowed the contractor to actually clear and grub. It did not remove the contested 52.1 acres from the limits within which the contractor was entitled to complete the clearing and grubbing work.

The Commission has failed to refute the contractor's evidence that this was not a change order as provided by the contract and that the refusal to allow the contractor to complete the work was done for the purpose of giving the Commission an economic advantage to the detriment of the contractor. Therefore, we affirm the trial court's finding of liability against the Commission.

2. The Commission also contends that the trial court erred in its computation of damages and we agree.

The trial court's computation of damages is set out below:

The unit bid price submitted by the plaintiff consisted of four categories of work. It was the least expensive category of work that reflects compensation for the grassland area the plaintiff was denied the opportunity to clear. Inclusion of this category in the unit price calculation for the work actually allowed to be completed effectively reduces the amount of compensation for the work performed. With the grassland factored into the unit price, the price per acre totaled $1,635.00. With the grasslands removed from the unit price per acre, the unit price would have been $1,863.00. The difference between the two unit prices is $228.00 per acre. When this adjusted amount is factored into the 460 acres

the plaintiff was allowed to clear and grub, the amount plaintiff was damaged totals $104,880.00.

In effect, the trial court has recomputed the unit price to be that which the contractor would have bid had the contract not contained the fourth grassland component.

Basically where the contract is wrongfully breached by the owner[,] the contractor is entitled to recover damages measured by his actual expenditure to the date of breach, less the value of the materials he has left on hand, plus the profit he would have realized in the event of complete performance, but in no event to exceed the contract price.

*Crankshaw v. Stanley Homes*, 131 Ga. App. 840, 842 (1) (207 SE2d 241) (1974). See generally *PMS Constr. Co. v. DeKalb County*, 243 Ga. 870, 872 (257 SE2d 285) (1979); *Dept. of Transp. v. Dalton Paving &c.*, 227 Ga. App. 207, 219 (6) (489 SE2d 329) (1997); *Marathon Oil Co. v. Hollis*, 167 Ga. App. 48, 50 (2) (305 SE2d 864) (1983).

There being no evidence in the record before us regarding the required proof and computation set out above, that portion of the judgment awarding damages is reversed and remanded for further proceedings. *Dill v. Chastain*, 234 Ga. App. 770 (507 SE2d 872) (1998).

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Ruffin, J., concur.*

DECIDED JUNE 14, 1999.

*Wiseman, Blackburn & Futrell, James B. Blackburn, Abda L. Quillian,* for appellants.
*Hunter, Maclean, Exley & Dunn, Christopher W. Phillips, Smith, Currie & Hancock, Glower W. Jones,* for appellee.