**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 20, 2015**

# In the Court of Appeals of Georgia

A15A1566. ROBLES et al v. YUGUEROS et al.

BARNES, Presiding Judge.

Rudy Robles, individually and as surviving spouse to Iselda Moreno and as administrator of the estate of Iselda Moreno (collectively, "Robles"), filed this suit against Patricia Yugueros, M.D., and her practice group, Artisan Plastic Surgery, LLC (Artisan), alleging that Dr. Yugueros committed medical malpractice during the post-operative care of Moreno, who died from complications after surgery. Robles appeals from the jury's verdict and judgment in favor of the defendants. He contends that the trial court erred in excluding Artisan's admission against interest, among other things. Because we agree that the trial court erred in excluding this evidence and that the error was harmful, we reverse the judgment entered on the defense verdict and remand for a new trial.

The record shows that on June 24, 2009, Dr. Yugueros performed a liposuction, buttock augmentation, and abdominoplasty surgery on Moreno at Northside Hospital. Moreno remained in the hospital overnight and was discharged the next day, with a post-operative visit scheduled for June 29, 2009.

On Saturday, June 27, 2009, two days after being discharged, Moreno called Dr. Yugueros at around 7:15 a.m. to report that she was experiencing pain in her upper abdomen and not eating well. Dr. Yugueros believed that Moreno was having gastritis caused by her prescribed medications, so she told Moreno to take only Tums and Tylenol instead. Robles called Dr. Yugueros a few hours later and said his wife was still in pain and he wanted to take her to the hospital. Dr. Yugueros recommended that they go to Northside Hospital, where she had privileges, but they went instead to Gwinnett Medical Center's (GMC) emergency department, where Moreno complained of severe abdominal pain, nausea, and vomiting.

Moreno was treated in GMC's emergency department by Dr. Michael Violette, an emergency room physician. Dr. Violette ordered an abdominal x-ray and read it as "unremarkable." Laboratory tests of Moreno's blood and urine were ordered, and the results revealed nothing unusual. He also examined Moreno's abdomen, diagnosed her with post-operative pain, and ordered anti-nausea and pain medication. She was then released from the ER with instructions to return if her symptoms worsened.

Dr. James York, a GMC radiologist, read the same x-ray Dr. Violette had reviewed. He thought it showed possible "free intreperitoneal air" in her abdomen and

recommended a CT scan. "Free air" could be a normal finding in a post-operative patient, but it could also indicate a serious condition. Dr. York's report was posted to Moreno's electronic medical record and faxed to GMC's emergency department shortly after Moreno was discharged, but neither Dr. York nor anyone else from GMC contacted Dr. Violette, Moreno, or Dr. Yugueros about Dr. York's findings. And no one checked GMC's fax machine until the following Monday.

Roughly three hours after being discharged from the GMC emergency department, Moreno was still suffering from extreme abdominal pain. Dr. Yugueros instructed Moreno not to return to GMC, but instead to go to Northside where she had privileges. Following an initial work-up in the Northside emergency room, Dr. Yugueros admitted Moreno for pain control and further evaluation.

Once admitted, Dr. Yugueros ordered that Moreno receive an incentive spirometer to assist her lungs and prescribed pain medications. Moreno's lab work returned within the normal range. Dr. Yugueros did not order x-rays or a CT scan.

Around 5:15 a.m., Moreno's nurse called Dr. Yugueros to report that the prescribed medication was not adequate to control Moreno's pain and that Moreno had concentrated urine and hypoactive bowel sounds. Dr. Yugueros ordered a different pain medication, IV fluids, and medication to help move Moreno's bowels.

3

Later that morning, Dr. Yugueros came to Northside and observed Moreno for approximately two hours, inspecting her surgical dressings and palpating her abdomen. Around 2:40 p.m., a nurse contacted Dr. Yugueros because Moreno's legs were numb and she had to be carried out of the bathroom to bed. Dr. Yugueros instructed the nurse to contact the rapid response team, which decided in concert with Dr. Yugueros to order an abdominal X-ray, an electrocardiogram, and blood tests. Dr. Yugueros also ordered abdominal pressure measurements to rule out abdominal compartment syndrome and ordered an internist consult.

Around 4:00 p.m., a hospitalist contacted the on-call surgeon for a consultation because Moreno's x-ray showed evidence of abdominal free air. The surgeon had to attend to another emergency patient first, but Moreno went into surgery around 7:10 p.m. The surgeon discovered that Moreno's stomach had basically torn open and was 95 percent necrotic. Moreno died later that evening.

Robles filed suit against Dr. Yugueros and Artisan, alleging professional and ordinary negligence arising out of Dr. Yugueros's post-operative medical care and treatment of Moreno. He did not not name GMC or any of its doctors or employees as defendants, but Dr. Yugueros and Artisan filed notices designating GMC, Dr. Violette, and Dr. York as non-parties against whom the jury should consider

4

apportioning damages. At the end of the trial, part one of the verdict form allowed the jury to find for either the plaintiff or the defendants, and instructed the jury that if it found for the defendants, it should stop there and sign and return the verdict. If it found for Robles, the jury was instructed to continue to part two regarding the damages award and the apportionment of fault among the defendants and non-parties listed on the verdict form. The jury returned a verdict in favor of Dr. Yugueros and Artisan, and Robles appeals.

Robles argues that the trial court erred in granting Artisan's motion in limine to exclude a portion of the deposition given by Artisan's corporate representative in response to Robles' notice of deposition under OCGA § 9-1-30 (b) (6). We agree the trial court erred in granting the motion, and that the error was harmful.

OCGA § 9-11-30 (b) (6) provides,

A party may, in his or her notice, name as the deponent a public or private corporation or a partnership or association or a governmental agency and *designate with reasonable particularity the matters on which examination is requested*. The organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which he or she will testify. *The persons so designated shall testify as to matters known or reasonably available to the organization*.

5

(Emphasis supplied.) In Robles' notice of deposition, he asked Artisan to designate someone who has "the most complete knowledge and [is] best informed as to the following areas on which examination is requested," including specifically "[t]he care and treatment rendered by Patricia Yugueros, M.D., to Iselda Moreno."

Artisan designated Diane Z. Alexander, M.D., as its representative to respond to the topics identified in Robles' notice of deposition. Dr. Alexander is the president of Artisan's board and owns half of the practice. At the deposition, Robles asked Dr. Alexander to recount her recollection of what she had been told about Dr. Yugueros' care of Moreno, and Dr. Alexander related the events as she understood them, beginning with Moreno's first two calls to Dr. Yugueros regarding her post-surgical pain. Dr. Alexander recalled that Moreno had gone to the Gwinnett Medical Center emergency room and had been discharged, called again with complaints of pain, and then went to Northside Hospital's emergency room, where Dr. Yugueros admitted her for observation. After Moreno's pain was controlled, Dr. Yugueros went home, but Moreno was then admitted to the intensive care unit and began to decompensate. Dr. Yugueros returned to the hospital and called general surgery, Moreno was put on the schedule, her surgery was delayed but she was finally brought to the operating room, and she passed away within hours.

Dr. Alexander concluded her recitation of Moreno's post-op treatment and care by saying, "I believe somewhere in there she had a CT scan as well," and the following exchange took place:

Q. Do you know who ordered a CT scan?

A. I suspect Dr. Yugueros ordered it.

Q. Would that, given your understanding, have been part of the standard of care to order a CT scan?

[Objection to form.]

A. If you don't understand why the patient — why they're having pain, it would be standard of care to — if you don't know what's going on, that would be a — yes. The answer is, yes, a CT scan would be — it would provide more information. And then the other piece of information that I remember were that she had the x-ray at the other hospital which showed free air and that that had not been communicated to Dr. Yugueros or — and the emergency room at Northside was also not made aware of that as well. So that's my recollection and that's just what Dr. Ashraf told me about the case.

In response to a notice to produce, Dr. Alexander brought to the deposition and identified Moreno's medical records that Artisan had maintained.

The trial court granted Artisan's motion in limine to exclude this testimony, finding that it was based on hearsay, that Dr. Alexander's opinion was not based on all the data necessary to form an opinion, that Robles did not ask whether Dr. Alexander could say to a degree of medical certainty that Dr. Yugueros violated the

7

standard of care, and that the testimony was ambiguous and could mean that "the CAT scan is part of what might be considered as part of the standard of care to be considered." But the issue is not whether Dr. Alexander's testimony was admissible as an expert opinion under OCGA § 24-7-702 (b). Under OCGA § 9-11-32 (a) (2), the properly-noticed deposition of a 30 (b) (6) witness is admissible against a party who was represented at the deposition, subject to the rules of evidence.

The defendant-appellees argue that a trial court's decision about whether a witness is qualified to render an expert opinion should be reviewed for abuse of discretion only, and contend that Dr. Alexander was not qualified as an expert and that her opinion was not buttressed by sufficient facts or data to be admissible. But this argument misses the mark entirely. The evidence was not offered as expert testimony under OCGA § 24-7-702 (b); it was offered as a party's admission against interest under OCGA § 9-11-32 (a) (2). Further, the fact that Dr. Alexander's admission was prefaced by the erroneous belief that Dr. Yugueros had ordered a CT scan when no one actually ever ordered one only adds to the import of her admission. She assumed that Dr. Yugueros had ordered a CT scan because, according to Dr. Alexander's subsequent explanation, the standard of care would be for the doctor to order a scan and obtain more information if she did not understand "what's going on"

8

or why the patient was having pain. Her testimony about standard of care was not based on whether or not Dr. Yugueros actually ordered a CT scan, but was simply an explanation of why a doctor should have done so.

The dissent would find harmless any error in this evidentiary ruling because the plaintiff presented expert testimony that the standard of care was to have ordered a CT scan, and because Robles could have called Dr. Alexander as a live witness and asked "similar non-objectionable questions." But the testimony of an expert witness, or even two expert witnesses, is not comparable to a party's admission against interest. And the fact that Robles could have called Dr. Alexander as a live witness is irrelevant, because he was entitled under OCGA § 9-11-32 (a) (2) to introduce the deposition testimony into evidence.

The trial court's error in failing to allow Robles to introduce Artisan's admission against interest was not harmless and necessitates a new trial.

Because the case must be retried, we do not reach the remaining enumerations of error.

*Judgment reversed and case remanded with direction. Doyle, C.J., Phipps, P.J., Boggs, J., and McMillian, J., concur. Andrews, P.J., and Ray, J., dissent.*

9

A15A1566. ROBLES et al. v. YUGUEROS et al.

RAY, Judge.

I respectfully dissent to the majority's opinion because I believe it was within the trial court's discretion to exclude that portion of Dr. Alexander's 30(b)(6) deposition testimony regarding whether the standard of care in the instant case required Dr. Yugueros to order a CT scan. Further, even if the trial court erred in this decision, I believe that such error was harmless. See *Griffin v. Greene County Hosp. Auth.*, 260 Ga. App. 122, 124 (2) (578 SE2d 913) (2003).

As noted by the majority, Robles sent a deposition notice to Artisan requesting that the company produce an OCGA § 9-11-30 (b) (6) representative to be deposed regarding, inter alia, "[t]he care and treatment rendered by Patricia Yugueros, M. D. to Iselda Moreno." In response to that notice, Artisan provided its president and founding partner, Dr. Alexander. At the deposition, Dr. Alexander erroneously testified that a CT scan had been ordered during the course of Moreno's treatment. Robles's counsel asked Dr. Alexander, "Do you know who ordered a CT scan?" She responded that "I suspect Dr. Yugueros ordered it." Robles's counsel then inquired, "[w]ould that, given your understanding, have been a part of the standard of care to order a CT scan?" Defense counsel objected "to the form" of the question, but Dr.

Alexander testified that "[i]f you don't understand why the patient – why they're having pain, it would be standard of care to – if you don't know what's going on, that would be a – yes. The answer is, yes, a CT scan would be – it would provide more information."

The defendants sought to exclude this portion of Dr. Alexander's deposition testimony at trial. In the motions hearing regarding this issue, defense counsel argued, inter alia, that the testimony regarding the standard of care was inadmissible because Dr. Alexander had not been qualified as an expert witness and, thus, was not eligible to offer her testimony as to the standard of care, and because Dr. Alexander did not base her opinion regarding the standard of care upon the facts of the case.

As noted in the majority's opinion, one of the trial court's stated reasons for granting the defendant's motion in limine to exclude this statement was that Dr. Alexander's opinion was not based on all the data necessary to form a valid expert opinion. Dr. Alexander's statement was clearly not based upon the facts of the case, as she erroneously believed that Dr. Yugueros had ordered a CT scan. See OCGA § 24-7-702 (b) (A witness qualified as an expert may offer opinion testimony if it is based upon sufficient facts or data and is the product of reliable principles and methods and if the witness has applied the principles and methods reliably to the facts

of the case). See also *Ga. Dept. of Transp. v. Owens,* 330 Ga. App. 123, 127 (1) (766 SE2d 569) (2014) ("The question of whether a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion") (citations and punctuation omitted). Here, because Dr. Alexander's opinion clearly was based, at least in part, on an erroneous statement of fact, I do not believe that the trial court abused its discretion in excluding it.[1]

Further, even if the trial court's exclusion of this testimony was in error, I believe that such error was harmless in light of other properly admitted expert testimony providing the same opinion and in light of Robles's opportunity, but failure, to call Dr. Alexander to the stand to question her on this issue. See, e. g., *Griffin,* supra 124 (2) (trial court's error in failing to admit deposition testimony of defendant's designated 30 (b) (6) deponent was harmless error). See also *Marathon Oil Co. v. Hollis*, 167 Ga. App. 48, 53 (5) (305 SE2d 864) (1983) (trial court's exclusion of plaintiff's deposition did not require reversal where plaintiff was called as a witness at trial and was thoroughly cross-examined by appellant's counsel, and

---

[1] Additionally, the defendants objected to the form of the question about the standard of care. While I have no doubt that Dr. Alexander could have been qualified as an expert to answer such question, it does not appear to me that she was asked the necessary questions to have been so qualified.

the deposition was used for impeachment purposes). Robles presented opinion testimony from other *properly qualified expert witnesses* that Dr. Yugueros allegedly violated the standard of care by not ordering a CT scan to investigate the source of Moreno's pain, and that a CT scan was necessary and would have shown the presence of free air and the acute abdominal condition. Robles was likewise not prohibited by the trial court from calling Dr. Alexander as a live witness to testify; this he chose not to do.[2]

For the above reasons, I respectfully dissent to the majority's opinion.

I am authorized to state that Presiding Judge Andrews joins in this dissent.

---

[2] Notably, Robles could have called Dr. Alexander to the stand, established that she had credentials to qualify as an expert on the subject of the requisite standard of care, ensured that she was fully apprised of the facts of the case, and then asked her whether the standard of care in this situation would have required that Dr. Yugueros order a CT Scan. If Dr. Yugueros had responded that it would not, then Robles could have sought to impeach her testimony with her statements in her deposition.